In the Matter of the Estate of GERALDINE G. BELLINGER, Deceased. MANUFACTURERS HANOVER TRUST COMPANY, Individually and as Executor of GERALDINE G. BELLINGER, Deceased, Appellant; ELIAS, SCHEWEL & SCHWARTZ et al., Respondents-Appellants.

Fourth Department, January 21, 1977

*Kelley Drye & Warren (Richard J. Concannon* of counsel), for Manufacturers Hanover Trust Company, appellant.

*Elias, Schewel & Schwartz (Marvin Schwartz* of counsel), respondent-appellant *pro se.*

*Phillips, Lytle, Hitchcock, Blaine & Huber (William Bain* of counsel) respondent-appellant *pro se.*

SIMONS, J. These are cross appeals from a decree of the Chautauqua County Surrogate who awarded compensation from the general assets of the estate to respondents, attorneys for legatees of the estate of Geraldine G. Bellinger. Manufacturers Hanover Trust Company (hereafter the "bank"), coexecutor of the estate, appeals. It concedes that the services of respondents benefited the estate, but contends that it was fully capable of protecting the interests of the estate and did protect them. It asserts that respondents acted as volunteers and must be paid by their own clients.

Geraldine G. Bellinger died in 1963 leaving a will by which the residue of her estate was bequeathed ⅓ to Bertram B. Parker and ⅓ to Geraldine M. Parker, her grandchildren, and ⅓ to the Gebbie Foundation, Inc. The bank and attorney J. Russell Rogerson were named coexecutors, and Rogerson was the attorney for the estate. A principal asset in the estate was stock in the Phelps Can Company. The other major stockholder in Phelps was Mrs. Bellinger's sister, Marion Gebbie. She had died in 1949, leaving her Phelps stock in trust for the benefit of Mrs. Bellinger, for life, and the remainder to the Gebbie Foundation, Inc., a charitable foundation created by the Gebbie will. Rogerson was also the attorney and a trustee for the Gebbie estate, president of the Gebbie Foundation and a director of Phelps Can Company. He held a minority inter-

est in the company's stock, the only Phelps stock outstanding other than Gebbie and Bellinger holdings.

The details of Rogerson's self-dealing are set forth more fully in other decisions in this matter (see 33 AD2d 284,* 76 Misc 2d 705). Briefly, however, it appears that in 1964, while Rogerson held these fiduciary positions with the Gebbie estate, the foundation, the Bellinger estate and Phelps Can Company, he advised the bank to sell its stock in Phelps Can Company to obtain funds to pay estate taxes. The plan was to sell the stock to the corporation to be converted into treasury shares and thereafter issued as part of an incentive plan for the company executives. The sale was consummated at the bargain price of $1,800 per share, far below the $4,040.84 book value of the stock, and well below its appraised value. After a series of transfers, Rogerson became the sole stockholder of Phelps Can Company and in 1967 he proceeded to liquidate the company at a substantial profit to himself.

In 1967 the infant Parker legatees, through William Parker, their father (represented by respondent Elias, Schewel & Schwartz [hereafter Elias]) and Marine Midland Chautauqua National Bank (represented by respondent Phillips, Lytle, Hitchcock, Blaine & Huber [hereafter Phillips]), as coguardians, instituted an action in Supreme Court charging the bank and Rogerson with negligence and self-dealing in the sale of the Phelps stock held by the Bellinger estate to Phelps Can Company. The bank, as a defendant, cross-claimed against Rogerson. The Parkers and the bank were granted summary judgment against Rogerson (see *Parker v Rogerson,* 33 AD2d 284, *supra),* and after trial the legatees' complaint against the bank was dismissed by the trial court upon a finding that the bank had acted reasonably in relying upon the fidelity of the estate's attorney, Rogerson.

The judgment in favor of the Parkers and the bank entered against Rogerson in 1970 was finally satisfied after settlement with Rogerson in 1975. Under the terms of that agreement, Rogerson reimbursed the estate $534,548.86, resigned as coexecutor and forfeited his fees and commissions, estimated to amount to $500,000. Supreme Court also ordered him to pay fees and disbursements to Elias ($60,000), Phillips ($18,000) and the bank's attorneys ($37,500), all without prejudice to

* App dsmd 26 NY2d 964; see, also, *Parker v Rogerson,* 76 Misc 2d 705, mod 49 AD2d 689, 690; 41 AD2d 600; 35 NY2d 751.

this present application to the Surrogate for compensation from the estate (see *Parker v Rogerson, supra).* It is the Surrogate's decree upon that application which is appealed here.

By statute (SCPA 2110) the court is authorized to award compensation to an attorney for services rendered to a fiduciary, devisee, legatee, distributee or any person interested. The compensation may be directed from the estate generally or from the funds in the hands of the fiduciary belonging to any legatee, devisee, etc. (SCPA 2110, subd 2).

The general rule was stated by Justice WITMER (then Surrogate) in *Matter of Graves* (197 Misc 638, 639): "where legal services have been rendered for the benefit of the estate which result in enlargement of the distributive shares of the estate beneficiaries, reasonable compensation should be granted out of the estate for such services. This is particularly so in a case where, because of *interests of the executors adverse to those of the beneficiaries,* justice may not be done except for the performance of legal services by counsel for the beneficiaries. In such case the personal interests of the executors cause them and their counsel, in effect, to step aside and permit those whose interests are not inimical to the estate in general to protect the rights of the estate. Even in such case, however, the services rendered must be substantial, and must be directed toward a bona fide issue, and may not be merely nominal in overcoming an obviously erroneous claim by the fiduciary." (Emphasis added; see, also, *Matter of Lounsberry,* 226 App Div 291; *Matter of Smith,* 167 Misc 95; *Matter of Hirsch,* 154 Misc 736.)

The test of benefit is whether the distributees of the estate, in their capacities as such, have become entitled to receive greater sums from the assets of the estate during administration than those that might have been expected without the applicant's efforts (see *Matter of Hirsch, supra).* Clearly, they will in this case. The question is whether respondents can claim credit for that benefit.

The theory which justifies payment by the estate to the attorney of a beneficiary is that the attorney has represented the fiduciary who has defaulted in protecting or collecting the assets of the estate and, therefore, what would have been a proper charge for legal fees if the executor had acted, is a proper charge when the executor fails to act because of an adverse interest, disinclination or neglect. It is the necessity of

the situation which justifies the payment to the attorney of one party by all the others interested in the estate. The mere fact that an outside attorney, while preserving the interests of his own client, suggests a course of action which produces a saving to the estate *(Matter of Kaufman,* 169 Misc 714, affd 256 App Div 1070; *Matter of Wicks,* 269 App Div 675), or forces the executor into action *(Matter of Trescott,* 199 Misc 1087), or acts in conjunction with the executor's attorney but without retainer *(Matter of Wadsworth,* 250 App Div 11, affd 275 NY 590) is not sufficient. Volunteers may not be compensated from the general assets of the estate.

It is abundantly clear that Elias and Phillips were more than volunteers acting on behalf of their own clients in this case. Both Surrogate CASS, who signed this decree, and Justice KUSZYNSKI, who presided during the Supreme Court action, have found that respondents supplied the kinetic force that moved the bank to action and that they performed a major portion of the necessary work to bring this case to a successful conclusion. The Parker legatees commenced this suit and successfully pursued it to judgment against Rogerson and to a trial against the bank. Moreover, Elias obtained the suspension of Rogerson as cofiduciary of the estate during the proceedings and pursued the necessary legal proceedings to collect the judgment. When the judgment against Rogerson was paid in 1975, it was Elias who negotiated the settlement which resulted in payment of the stock loss and dividends, the resignation of Rogerson as fiduciary, and the forfeiture of his fees and commissions.

The thrust of the bank's defense is that respondents' services were duplicative of those performed by it. It points out that it devised the theory of recovery against Rogerson adopted by the court, that it successfully moved for summary judgment, that the action against it was dismissed after trial, and that it moved for an accounting against Rogerson and Phelps and participated in all aspects of the trial. The bank concedes, however, that it did nothing until the Parkers started the action, that Parkers' counsel discovered the self-dealing and developed the facts of this case, that respondents obtained the suspension of Rogerson and that respondents negotiated the settlement of the judgment. In view of these concessions, it seems evident that much of the bank's effort was directed towards defending the action against itself and

recouping any loss it might sustain by its cross claim against Rogerson.

The bank further argues that the respondent must first demand of the executor that it protect the estate assets and that not until the fiduciary fails to act after a reasonable opportunity to do so may the outside counsel proceed with the expectation of compensation from the general assets of the estate (see *Matter of Allan,* 5 AD2d 453, affd 5 NY2d 333; *Smith v Johnson,* 200 App Div 811; *Matter of Ziegler,* 170 Misc 748, 750). This is another way of saying that the right of an interested party to act as a quasi-fiduciary arises only of necessity when the fiduciary is unable to act impartially or is unwilling to do so.

No demand was necessary in this case. From the beginning the bank, as coexecutor, was in a position adverse to the legatees. It had participated in the transfer of the stock to the company, an event which was implicit with a conflict of interest for its coexecutor, since it gave him majority control of the company. Once Rogerson's self-dealing took place, the bank was exposed to a charge of negligence and a surcharge in favor of the estate. The bank's position was compromised further because before the transfer it had received indications of the potential mischief in the transfer. By a letter in 1964, Rogerson himself had alerted the bank to serious questions involved in a sale to himself or the company. Shortly afterward, the stock appraisers also pointed out that selling the stock either to the company or Rogerson would result in Rogerson obtaining absolute control of Phelps Can Co. Later, in 1967, when William Parker became suspicious of the liquidation plans, he inquired of the bank and eventually wrote a letter to it seeking details of the stock transfers. The bank transmitted this letter to Rogerson for answer and Rogerson wrote a transparently uninformative response to Mr. Parker, sending a copy to the bank. Even with this information before it, the bank showed no apparent interest in investigating or inquiring into the matter.

The bank may have been justified in relying upon the advice of Attorney Rogerson in conducting these affairs, as the trial court held, nevertheless, the legatees were entitled to step in to protect the assets of the estate under the circumstances.

The record contains the documentation necessary to support the fees awarded by the Surrogate for services in this eight-

year long litigation. Insofar as respondent Elias cross-appeals from the court's refusal to compensate it for the time expended in the trial of the action against the bank (which had been consolidated with the Gebbie Foundation's similar action, an action in which respondents had no interest), that determination was proper. The estate did not benefit from the services rendered in that trial.

The decree should be affirmed.

CARDAMONE, J. P., DILLON, GOLDMAN and WITMER, JJ., concur.

Decree unanimously affirmed, without costs.