OPINION OF THE COURT
Irving A. Green, J.
In an equity action seeking judgment against the defendant for an accounting and for a decree that the moneys found upon such accounting held by the defendant be impressed with a trust for the benefit of the plaintiff for the purchase of an ambulance for plaintiff’s use, and for other relief, the defendant cross-moves the court, pursuant to CPLR 3211 (subd [a], par 7) or 3211 (subd [c]) for an order *335 dismissing the complaint. This court, by interim order, dated May 27,1982, and pursuant to CPLR 3211 (subd [c]) gave notice that such cross motion will be treated as a motion for summary judgment. The parties were granted 20 days to submit whatever additional evidence they deemed advisable.
The following circumstances established by the papers submitted on this cross motion and not in dispute, have given rise to the commencement of this action. In 1949 an emergency relief squad was organized within the Chester Fire District and was known as the Chester Fire District Emergency Relief Squad. Such rescue squad was comprised solely of volunteer firemen of the Chester Fire District. In the ensuing years membership in the relief squad became expanded and included members who were not volunteer firemen members of the Chester Fire District and included volunteers of both sexes engaged in providing free ambulance service, manned by such volunteers, to provide first aid and transportation to injured, wounded and sick persons. Such public service extends to responding to all kinds of accidents, the transporting of ill persons to and from doctors and hospitals from their homes, or from airports.
By 1956, the name of the rescue squad was changed to Chester Volunteer Ambulance Corps. It maintained its own autonomy structurally and operationally conducting its own fund drives to raise the revenue necessary to defray its operational costs. The ambulance corps was advised in May, 1961, by the then Chairman of Fire Commissioners of the district that the fire district could not purchase an ambulance for the independent ambulance corps since no tax moneys raised by the Chester Fire District could be appropriated for this purpose. Nevertheless, it appears from the papers submitted on the cross motion that until the end of 1976 the ambulance corps worked in co-operation with the Chester Fire District and received assistance, housing and other services connected with the work and purposes of the ambulance corps. Thereafter, the plaintiffs claim the ambulance corps joined the Chester Fire District as a fourth company upon the representation by the Chester Fire District that the ambulance corps would then *336 receive 100% financing from the public tax revenues raised and allocated to the Chester Fire District; and, plaintiffs claim, such representation specifically included the purchase of a new ambulance needed by the ambulance corps. However, in February, 1981, the Chester Fire District received an opinion from the legal division of the State Comptroller that the fourth company of the Chester Fire District, and its financing by the Chester Fire District, was illegal in that all members of emergency rescue and first-aid funds must be volunteer firemen. The ambulance corps was given the choice to become volunteer firemen but rejected the offer and withdrew from the Chester Fire District and became an independent not-for-profit corporation.
The Chester Fire District, during the period when the ambulance corps was its fourth company, out of the general public tax revenues allocated to the Chester Fire District, created and maintained, and still maintains an ambulance capital reserve fund which is not being used and remains untouched. A sum somewhat in excess of $20,000 is claimed to be held in such fund.
Upon this motion for summary judgment it is axiomatic that issue finding rather than issue determination is the key to the procedure; and that to grant summary judgment it must clearly appear that no material and triable issue of fact is presented. This drastic remedy should not be granted where there is any doubt as to the existence of such issues. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404.)
The two first causes of action set forth in the complaint on behalf of each plaintiff seeks an accounting by the defendant for all moneys received, disbursed and retained by the defendant under and pursuant to the status of the ambulance corps as a fourth fire company.
These two first causes of action must be and are dismissed. The structure of the ambulance corps for a period of time as a fourth fire company did not create that relationship of trust between it and the Chester Fire District as would support a cause of action for an accounting in equity. Absent such relationship, the nature or number of *337 breaches will not create it. (Kaminsky v Kahn, 20 NY2d 573, 582.) In addition, the moneys which are the subject of the demand for an accounting were not entrusted to the Chester Fire District by the plaintiffs or either of them. The source of such moneys was tax revenues exacted from the general public to provide the funds required for the lawful activities and purposes of Chester Fire District. The fact that the Chester Fire District to support its budget requests indicated an intention to purchase an ambulance, among other apparatus and equipment, did not, ipso facto, serve to segregate tax revenue receipts in any amount into a special fund for such exclusive use. It appears that in the opinion of the State Comptroller a fire district may establish a capital reserve fund to pay for the acquisition by it of an ambulance (Opns St Comp, 1980, No. 80-206) although the expense of operation and maintenance of the ambulance cannot be paid from the capital reserve fund revenues. Nevertheless, it is generally held that to warrant a decree in equity for an accounting, it must be established that the defendant has been entrusted with property or money of the plaintiff, or the defendant has title to or possession of money in which the plaintiff has an interest, and, in consequence, in equity is bound to reveal his dealing with it. (1 NY Jur 2d, Accounts and Accounting, §36.)
Here, there is no identifiable property or moneys held by the defendant entrusted to it by the plaintiffs, or either of them, or in which they may claim a lawful interest. The public tax revenues allocated to the Chester Fire District for its lawful use and purposes may not be expended for the use and benefit of private independent organizations regardless of its devotion to laudable public service such as a volunteer ambulance corps. The voluntary commencement by the Chester Fire District of an ambulance capital reserve fund and the deposit therein of such sums out of its total tax revenues as may have been determined by the board of fire commissioners, in the view of this court, did not give birth to an interest therein of the plaintiffs sufficient to require an accounting in equity. The expenditure of the moneys in the ambulance capital reserve fund may *338 be made only upon authorization by the board of fire commissioners. (General Municipal Law, § 6-g, subd 7.)
The two second causes of action brought on behalf of the plaintiffs which seek a decree enjoining the defendant from its purchase of a 1750 G.P.M. pumper fire truck with funds from the ambulance capital reserve fund are dismissed. It is not now disputed that the purchase of such apparatus will not be made with the use of such ambulance funds.
The third cause of action brought on behalf of the plaintiff, Chester Volunteer Ambulance Corps, Inc., seeks a decree that the acts of the defendant are in violation of the express and/or implied understanding between the parties for which such plaintiff lacks an adequate remedy at law; and that the defendant be decreed, in substance, to turn over the moneys in the ambulance capital reserve fund to this plaintiff. Summary judgment dismissing such third cause of action is denied.
The critical and essential public services which the unpaid volunteers of the Chester Volunteer Ambulance Corps, Inc., renders to the communities which it serves, must be recognized and fairly dealt with in connection with the third cause of action set forth in the complaint herein. The urgent public need for the efficient and modern operation of its emergency services, particularly with regard to its ambulances, need hardly be belabored by the court. The declination of the volunteers in the ambulance corps to become volunteer firemen may not serve as a proper basis for denying to the people of the communities they serve the critical voluntary ambulance services of the plaintiff organization. It has been said that the plastic remedies of the chancery are molded to the needs of justice. (Foreman v Foreman, 251 NY 237, 242.) A court of equity is not hampered by the restrictive and inflexible rules which govern common-law courts. The extent of equitable relief is not a matter of fixed rule. The flexibility of equitable jurisdiction permits innovation in remedies to meet all varieties of circumstances which may arise in any case. The power of equity is as broad as equity and justice require. (Ripley v International Rys. of Cent. Amer., 8 AD2d 310, affd 8 NY2d 430; 20 NY Jur 2d, Equity, § 30.)
*339 The court finds, therefore, triable equitable issues are presented with respect to the relief, if any, to which the plaintiffs may be entitled. Such determination requires a plenary trial of the facts and circumstances which are the subject of the third cause of action in the complaint herein, after which the trial court properly can determine whether or not the plaintiff is entitled to equitable relief and, if so, mold a decree as justice may require.
In all other respects, the cross motion is denied.