Alan PRESSMAN, Plaintiff,

v.

The ESTATE Of Guido STEINVORTH, Olimpia Pena Tejera, Inga Steinvorth De Goetz, Gisela Steinvorth De Junkers, individually and as potential representatives of the Estate of Guido Steinvorth; and the Republic of Venezuela, Defendants.

Olimpia Pena TEJERA, individually and as representative and heir of the Estate of Guido Steinvorth, Plaintiff,

v.

Alan PRESSMAN, Defendant.

Nos. 86 Civ. 395 (RLC), 87 Civ. 6105 (RLC).

United States District Court, S.D. New York.

Aug. 17, 1994.

D'Amato & Lynch, New York City, for plaintiff Alan Pressman (William P. Larsen, III and Lisa L. Shrewsberry, of counsel).

Beldock, Levine & Hoffman, New York City, for defendant Olimpia Pena Tejera (Ronald C. Minkoff, of counsel).

## OPINION

ROBERT L. CARTER, District Judge.

These two cases, 86 Civ. 395 (RLC) and 87 Civ. 6105 (RLC) have been consolidated. 86 Civ. 395 is an interpleader action in which plaintiff Alan Pressman ("Pressman")—as holder of funds belonging to Guido Steinvorth ("Steinvorth"), the decedent—sought and deposited said funds (the "Interpleader Funds") with the court in accordance with the court's order set forth in its Amended Opinion of July 31, 1989 ("Amended Opinion"). . Pressman also seeks to recover his attorney's fees, costs and expenses for bringing the interpleader and defending other related actions. In the partial summary judgment motion presently before the court, defendant Olimpia Pena Tejera ("Pena"), as heir to the Steinvorth Estate, seeks an order pursuant to Rule 56, F.R.Civ.P., awarding her the Interpleader Funds. She also seeks summary judgment dismissing Pressman's claims for fees and costs.

87 Civ. 6105 is an action by counterclaimant Pena in which she moves for a full accounting by defendant Pressman of all Steinvorth assets in his possession. Pressman, however, has cross-moved, pursuant to Rule 12(b), F.R.Civ.P., for dismissal of Pena's accounting counterclaims on the basis that Pena has failed to join indispensable parties.

Lastly, Pena seeks discharge of a bond for costs which the court ordered Pena to post as security for expenses incurred in this litigation.

### I.

Guido Steinvorth was a Venezuelan citizen with business dealings in the United States, Latin America and Europe. Beginning in December, 1981, Steinvorth retained Pressman, a New York attorney, to handle his legal and financial affairs in the United States.

Steinvorth did business through a series of corporations and other entities. (Pena Aff. ¶ 6.) Steinvorth apparently either owned these entities alone or with others, or managed them through powers of attorney. (*Id.*) These entities included the Vulcan Financial Corp. ("Vulcan"), Western Hemisphere Trade and Service Corp. ("Western Hemisphere"), Facundo, S.A. ("Facundo"), Devcon, BBH, R.W. Company, Occidental Trade and Occidental Properties. (*Id.*) Pressman did legal work and managed funds for many of these entities. (Pena Aff., Ex. F.) Steinvorth also entrusted Pressman with various funds which were held in three accounts and a certificate of deposit. As of March, the value of these funds, the Interpleader Funds, totalled approximately $139,000. (Endorsement dated August 9, 1988 ("Endorsement") at 1.)

Steinvorth died in March, 1984 leaving a will in Venezuela. The will named Pena the universal heir of the Steinvorth Estate, (Pena Aff. ¶ 9), but was contested by one of Steinvorth's sisters, Inga Goetz, and later by her children following her death. At that time, Pressman still held the Interpleader Funds and other assets which Steinvorth had entrusted to him. (Hr'g. Tr. at 103–04, Pena Aff. Ex. D.)

In the months subsequent to Steinvorth's death, Pena and her representatives requested, with limited success, Pressman to account for the Steinvorth assets in his possession. (Pena Aff. ¶¶ 11–15.) At the same time, other claimants to assets Steinvorth had entrusted to Pressman sued to recover those assets. These cases, the "Earlier Actions," are as follows:

1. *Gisela Junkers v. Alan Pressman,* 84 Civ. 4263 (S.D.N.Y.) (Griesa, J.) ("*Junkers*")—Gisela Junkers, Steinvorth's sister,

sued Pressman to recover approximately $1,600,000 which she alleged had been improperly transferred into Pressman's special account. Pressman claimed that the funds were transferred only at Steinvorth's instruction. Pressman eventually accounted for the money and the suit was discontinued. (Pressman Am.Compl. ¶ 19.)

2. *Vulcan Financial S.A. v. Pressman,* 84 Civ. 4264 (S.D.N.Y.) (Leval, J.) (*"Vulcan"*)—Vulcan sued Pressman seeking recovery of monies owned by Vulcan under Pressman's control. Pressman initially refused to turn over the money because other parties had contacted him claiming ownership of Vulcan and their entitlement to the funds. However, following a court order, Pressman deposited the funds at issue into the court and the suit was dismissed. (Pressman Am.Compl. ¶ 20.) Shortly thereafter, the money was paid to Vulcan. (Minkoff Aff. ¶ 6(b) and Ex. 3.)

3. *Facundo, S.A. v. Pressman,* Index No. 5844/85 (N.Y.Co.Supreme Ct.) (*"Facundo"*)—The directors of Facundo, a company owned by Steinvorth with Pena, sued Pressman to recover certain bonds (the "SACCO Bonds") which the company claimed it owned. The bonds had been placed in Pressman's care upon the instructions of Steinvorth. Pressman refused to turn over the bonds, believing they belonged to Steinvorth. Pressman still has the bonds and the case is pending. (Pressman Am.Compl. ¶ 21.)

About two years after Steinvorth's death, Pressman initiated the interpleader action. In addition to seeking to pay the Interpleader Funds into court, he also sought to recover his fees for commencing the interpleader and defending the Earlier Actions. Subsequently, Pena counterclaimed seeking an accounting from Pressman. However because she was concerned that she could not bring a counterclaim in this type of interpleader action, she also commenced a separate action for the same relief. (Pena Mem. at 9.)

Thereafter, Pressman moved for a bond for costs, claiming that Pena's counterclaims were premature because the will contest had not yet been decided. In its Endorsement, the court granted the motion and ordered Pena to post a bond in the amount of $75,000.

The bond has remained in place ever since that time.

On November 25, 1988, a Venezuelan lower court ruled in Pena's favor in the will contest. (Pena Aff. ¶ 19.) A mid-level appellate court affirmed this decision on June 29, 1989. (*Id.*) The will contestants then appealed to the Venezuela Supreme Court.

In its Amended Opinion, the court directed Pressman to deposit the Interpleader Funds into the registry of the court. However, it did not discharge him due to inadequacy of Pressman's documentation of the Steinvorth assets under his control. The court then stayed all further proceedings in this matter pending final determination by the Venezuelan courts as to the rightful heir of the Steinvorth Estate.

In November, 1991, the Venezuela Supreme Court rejected all claims by those contesting Steinvorth's will. (Pena Aff., Exs. A and B.) This ruling confirmed Pena's status as universal heir of the Steinvorth Estate. (Pena Aff., Ex. C.)

Since the Venezuela Supreme Court's rulings, the parties have conducted informal discovery and tried to negotiate a settlement. During this process, Pressman revealed, for the first time, a corporate account in the amount of $250,000 belonging to Western Hemisphere. Its proceeds had been paid to a court-appointed attorney. (Minkoff Aff. ¶ 17.) Pressman also revealed that an accountant in New Jersey had ten boxes of records relating to entities in which Steinvorth possibly had an interest, which Pena was then allowed to inspect. (*Id.* ¶ 18.) Pressman then disclosed that he had two more file drawers of documents in his office. However, Pressman refused to allow Pena to inspect these documents, claiming, among other things, that Pena had not established that Steinvorth had an ownership interest in the subject matter of the documents. (Larsen Aff. ¶ 15.) Nevertheless, he offered to disclose these records to Pena in return for a general release. (Minkoff Aff. ¶ 19.) Pena refused this offer and this motion followed.

## II.

A motion for summary judgment under Rule 56, F.R.Civ.P., may be granted if

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment must initially demonstrate the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

Defendant/counterclaimant Pena argues that partial summary judgment is appropriate here because as the sole claimant and universal heir to the Steinvorth Estate, she is entitled to the Interpleader Funds which Pressman deposited with the court nearly five years ago. Although Pressman concedes that Pena is the "legal representative and heir" of the Estate, he argues that the monies cannot be properly transferred to her because she lacks the capacity to maintain this action due to her failure to obtain ancillary letters of administration from the Surrogate's Court, which is required of a representative of an estate whose decedent was domiciled outside the United States. *See* Rule 17(b), F.R.Civ.P. (capacity of an individual to sue or be sued in a representative capacity shall be determined by the law of the state in which the district court sits).

Rule 9(a), F.R.Civ.P., which governs the capacity of a party to sue or be sued, provides in pertinent part:

> When a party desires to raise an issue as to the legal existence of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, the party desiring to raise the issue shall do so by specific negative averment, which shall include supporting particulars as are peculiarly within the pleader's knowledge.

Under the Rule, if the defense is not raised in a timely manner, i.e. at the outset of a lawsuit, it is waived. *See* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1295 (1990); *see also Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc.*, 929 F.2d 343 (7th Cir.1991) (defendant waived right to use capacity defense in motion to dismiss first amended complaint because of failure to timely raise capacity issue in direct negative averment); *Windbourne v. Eastern Air Lines, Inc.*, 479 F.Supp. 1130, 1155 (E.D.N.Y. 1979), *rev'd on other grounds*, 632 F.2d 219 (2d Cir.1980) (lack of capacity defense waived if not raised in answer).

Pena argues that Pressman waived the capacity defense by waiting more than seven years before raising it. Pressman, on the other hand, contends that he did raise this issue in his answer to Pena's amended complaint and in communications between counsel. (Larsen Aff. ¶ 2.) Notwithstanding any reference to ancillary proceedings which may have been made during the course of these proceedings, the only time that Pressman formally raised anything resembling a lack of capacity defense was in his answer to Pena's amended complaint, where he stated that plaintiff did not have the "requisite legal standing to bring the instant suit." (Pressman Am. Answer at 9.) Even accepting Pressman's assertion that standing and capacity are in effect the same due to their often blurred distinctions among litigants and the courts, (Larsen Aff. ¶ 2),[1] Rule 9(a), F.R.Civ.P. requires not only that the pleader make a specific negative averment of the plaintiff's capacity to sue, but also that the averment include "such supporting particulars as are peculiarly within the pleader's knowledge." *Marston v. American Employers Insurance, Co.*, 439 F.2d 1035, 1041 (1st Cir.1971). In the instant case, Pressman merely asserted that Pena did not have the requisite standing to bring this suit; he gave no particulars or other explanation for this claim. Because Rule 9(a) dictates that a pleader set forth particulars supporting this

---

[1]. In fact, capacity is a party's personal right to litigate in federal court, whereas standing, a more elusive concept, "requires at a minimum that there be an 'actual injury redressable by the court.'" *Felson v. Miller*, 674 F.Supp. 975, 977 (E.D.N.Y.1987).

assertion, Pressman in effect waived the capacity defense by failing to be more explicit in his answer. Accordingly, Pressman's claim that he raised the capacity issue by alleging Pena's lack of standing must be rejected.

■ Moreover, even if Pressman had not waived the defense of lack of capacity, his objection would still be rejected because Pena does not need ancillary letters of administration in order to bring this suit. To show Pena's lack of capacity, Pressman relies on a New York common law rule that estate executors and administrators cannot sue or be sued in the courts of New York without first obtaining ancillary letters of administration. *See Helme v. Buckelew,* 229 N.Y. 363, 366, 128 N.E. 216 (1920); *Haines v. Cook Electric Co.,* 53 Misc.2d 178, 178, 278 N.Y.S.2d 357, 358 (Sup.Ct.1967). However, that rule does not apply when the foreign representative is suing or being sued in her individual, rather than in her representative capacity. *Roques v. Grosjean,* 66 N.Y.S.2d 348, 348 (Sup.Ct.1946) (where plaintiff not suing as legatee, but suing on her own behalf as owner of property where under French law title to and right of possession of all assets of deceased vested immediately in plaintiff as sole legatee, action could be prosecuted without obtaining ancillary letters); Samuel Hoffman, *Practice Commentary,* N.Y. Est. Powers & Trusts Law. § 13–3.5 (McKinney 1967) ("the common law rule had no proper application when the foreign representative sued in our courts in his *individual,* as opposed to his representative, capacity.") (emphasis in original).

■ In the instant case, Pena is not suing in her representative capacity, but to recover her own property. Pena maintains that Steinvorth's will made her the "universal heir" of the entire Estate, (Pena Reply Aff. Ex. A.), and that under Venezuelan law, she immediately became entitled to all Estate assets (subject to paying off creditors and taxing authorities) upon Steinvorth's death. (Pena Aff. ¶ 10 and Ex. G.) Moreover, it is clear from the language of her first amended complaint that she is suing to recover property in her individual capacity. Indeed, in her complaint Pena states that as Stein-

vorth's heir, she "has full rights ('pleno derecho') to defend as her own assets the assets left by Mr. Steinvorth." (Pena Am.Compl. ¶ 2.) Therefore, because Pena is suing to recover property in her individual capacity, not as an Estate representative, she need not obtain ancillary letters before being granted the Interpleader Funds. Accordingly, as universal heir to the Steinvorth Estate and sole claimant in the interpleader action, Pena is entitled to summary judgment and an awarding of the Interpleader Funds. Thus, Pena's motion for partial summary judgment is granted.

### III.

In her counterclaim and complaint in the consolidated action, Pena requests an accounting of all Steinvorth assets in Pressman's possession. Pressman, on the other hand, seeks dismissal of Pena's accounting claims, presumably pursuant to Rule 12(b)(7), F.R.Civ.P., due to Pena's failure to join persons needed for just adjudication as required by Rule 19, F.R.Civ.P. He first contends that because Pena seeks an accounting of Pressman's records relating to various business entities and any assets he may be holding for Facundo, S.A., including the SACCO bonds and other assets that are the subject of the *Facundo* action, Pena's failure to join Facundo as a party in this seven year litigation, and her failure to pursue it any further, requires its dismissal with prejudice. Pena, though not conceding that Facundo is an indispensable party to this action under Rule 19(a), F.R.Civ.P., does not object to dismissing the *Facundo* claim if the dismissal is made without prejudice.

■ Assuming arguendo that dismissal is warranted because Facundo is an entity whose joinder is required under Rule 19(a), F.R.Civ.P., and which cannot be joined under Rule 19(b), F.R.Civ.P., such dismissal is without prejudice as it is not considered to be on the merits. 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1609 (1990). Moreover, the dismissal need only cover the portion of Pena's claims relating to Facundo; her other claims may remain intact. *See Wm. Passalacqua Builders, Inc., v. Resnick*

*Developers South, Inc.,* 933 F.2d 131, 141 (2d Cir.1991) (fact that non-diverse plaintiff had to be dismissed from action did not require whole complaint to be dismissed where plaintiff was not indispensable to resolution of remaining claims against defendants).

■ Nonetheless, Pressman also argues to the extent that Pena's claims relate to assets held by entities other than Facundo, those entities too must be joined as parties or the claims dismissed. Pena, however, maintains that dismissal at this point would be inappropriate. She points out that it was Pressman who indicated that Steinvorth operated his affairs through nominees, (Pressman Dep. Tr. at 12, Pena Aff. Ex. E), and the purpose of her accounting claim is to find out what these nominee corporations are, whether they are legitimate corporate entities and whether they have assets. Thus, only after determining the identities of these corporations will Pena know against which entities she may have a claim and which entities should be joined.

Pena's argument is persuasive. Since the identities of these nominee corporations have not yet been determined, and in fact Pena is seeking discovery on this issue, it would be precipitous to dismiss Pena's accounting claims before she is given an opportunity to determine the identity of these entities. Therefore, with the exception of Pena's claims relating to Facundo, Pressman's motion to dismiss Pena's accounting claims is denied. However, Pressman's motion to dismiss the Facundo claim is granted without prejudice.

### IV.

Notwithstanding the fact that Pressman has already revealed the location of over $250,000 in cash belonging to Western Hemisphere and ten boxes of documents concerning other corporate entities, he has refused to turn over two file drawers of other corporate documents held in his office (the "Withheld Documents"), despite Pena's assertion that these documents belong to the Steinvorth Estate and that Pressman has a duty to account for them.

■ Although Pressman apparently still maintains his argument that Pena's accounting claims should be dismissed due to her failure to join indispensable parties, he also argues that disclosure, with respect to the Withheld Documents at least, will violate client confidences because Pena has not sufficiently proven her ownership of the relevant corporate entities to obtain disclosure. (Larsen Aff. ¶¶ 14–15.)

Specifically, Pressman maintains that these documents cannot be revealed because they relate to transactions or proposed transactions of certain corporations or business entities in which Steinvorth may or may not have had an ownership interest; that his services were rendered at the instruction of Robin Wilson, a business associate of Steinvorth; and that they do not relate to any assets that were held individually by Pressman on behalf of Steinvorth. (*Id.* at ¶ 15.) Nevertheless despite these claims, Pressman, in a desire to finally put an end to this litigation, has agreed to release the documents in return for a general release to shield him from potential liability as a result of claims that could be asserted by third parties. (*Id.* at ¶ 18.)

■ Notwithstanding Pressman's inexplicable offer to allow Pena to see the supposedly confidential Withheld Documents, in which she may or may not have an interest, it is not clear that Pressman should be required to turn over documents to Pena which may not belong to the Steinvorth Estate. As Steinvorth's heir and Estate representative, Pena has every right to an accounting of Steinvorth's documents in Pressman's possession. *See Koppel v. Wien, Lane & Malkin,* 125 A.D.2d 230, 234, 509 N.Y.S.2d 327, 330 (1st Dep't 1986) (given fiduciary relationship between real estate partners and law firm, partners had absolute right to an accounting); *Penato v. George,* 82 A.D.2d 877, 878, 440 N.Y.S.2d 314, 316 (2d Dep't 1981) (administratrix of estate entitled to accounting where established that decedent had entered into an agreement concerning his percentage share in net income produced by the development of certain inventions); *In re Estate of Cohen,* 139 Misc.2d 1082, 1086, 529 N.Y.S.2d 958, 960 (Sur.Ct.1988) (Surro-

gate's Court has authority to compel accounting of co-executor for her activities as attorney-in-fact of decedent from date of her appointment to decedent's death). Nonetheless, Pena has no right to see documents relating to entities in which Steinvorth did not have an interest.

■ A party seeking an accounting must first establish four conditions: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." *300 Broadway Realty Corp. v. Kommit,* 37 Misc.2d 325, 325, 235 N.Y.S.2d 205, 206 (Sup.Ct.1962). Although Pena has shown three of conditions listed above, that—(1) by acting as Steinvorth's attorney, Pressman became a fiduciary obligated to account to Steinvorth, and upon Steinvorth's death, his Estate; (2) she has no adequate remedy at law in terms or damages, but must see the Withheld Documents; and (3) she has demanded to see the Withheld Documents but Pressman has refused to disclose them absent a general release—her failure to adequately establish that she has an interest in all the relevant corporate entities is fatal to her claim. *See Kelly v. Chester Fire Dist.,* 116 Misc.2d 334, 337, 455 N.Y.S.2d 312, 314 (Sup.Ct.1982), *rev'd on other grounds,* 95 A.D.2d 799, 463 N.Y.S.2d 518 (2d Dep't 1983) (to warrant a decree in equity for an accounting, it must be established that the defendant has been entrusted with money or property of the plaintiff); 1 N.Y.Jur.2d, *Accounts and Accounting* § 36 (1979).

■ Furthermore, though Pressman has admitted that Steinvorth managed his assets through other entities and nominee corporations, (Pressman Dep.Tr. at 12, Pena Aff. Ex.E.), Pena is not entitled to the Withheld

Documents solely in the hopes that they "will provide relevant information on her claims of ownership." As discussed above, in order to establish her right to an accounting, Pena must first show that the requested documents belong to the Steinvorth Estate; she cannot first go through documents and then determine if Steinvorth had an ownership interest in the relevant entities. Although this result apparently puts Pena in the perplexing position of having to establish ownership of entities whose identities are unknown to her, this dilemma can be solved by Pressman's providing a complete and thorough index of the entities (nominee corporations) whose documents are found in the Withheld Documents.[2] This index should include the name of entities in question, a brief description of the nature of the document, a short explanation of the connection the entity has with Steinvorth and, if the claim is that it has no connection, the basis for that claim. Thereafter, Pena will have the burden of establishing Steinvorth's ownership interests in the relevant entities.[3]

### V.

As part of his interpleader action, Pressman seeks to recover his attorney's fees, costs and expenses from the Steinvorth Estate for defending the Earlier Actions and prosecuting the present one. He argues that he is entitled to this recovery due to his efforts to protect and preserve the assets of the Steinvorth Estate, including his efforts in commencing the present interpleader action. For his fees in the Earlier Actions, Pressman relies on N.Y.Surr.Ct.Pro.Act § 2110 (McKinney 1967) ("Section 2110"), which governs the recovery of attorney's fees in estate actions. In the alternative, Pressman seeks an award of counsel fees and sanctions pursuant to Rule 11, F.R.Civ.P. ("Rule 11").

**2.** Although Pressman has submitted an index in response to Pena's motion, it seems to be inadequate; it refers to "Bank statements for numerous corporate entities and Guido Steinvorth at Chase Lincoln Bank," but neither specifies the "corporate entities" nor explains why Pressman continues to withhold documents concerning Steinvorth's personal accounts. (Pressman Ex. 13, at 2.)

**3.** Pena has indicated that she has submitted proof of ownership of some of the Entities mentioned in the Index, specifically Western Hemisphere and Marbuck Industrial Development Corp. If Pressman has no articulable objection to Pena's proof of ownership, these documents should be immediately released to her.

*Section 2110*

■ Section 2110 of the New York Surrogate's Court Procedure Act ("SCPA") provides in relevant part:

At any time during the administration of an estate and irrespective of the pendency of a particular proceeding, the court is authorized to fix and determine the compensation of an attorney for services rendered to a fiduciary or to a devisee, legatee, distributee or any person interested or of an attorney who has rendered legal services in connection with the performance of his duties of a fiduciary or in proceedings to compel the delivery of papers or funds in the hands of an attorney.

Under this statute, an attorney seeking compensation must have performed legal services either: (1) as an estate fiduciary; (2) as an attorney for a fiduciary, devisee, legatee, distributee or any person interested in the estate; or (3) which benefitted the entire estate. 10D J. Cox, J. Arenson & S. Medina, *N.Y. Civil Procedure—(SCPA)*, ¶ 21104.04 (1993); *see also In re Estate of La Grove*, 31 A.D.2d 928, 299 N.Y.S.2d 80, 81 (2d Dep't 1969), *aff'd*, 30 N.Y.2d 624, 331 N.Y.S.2d 439, 282 N.E.2d 329 (1972) (fees for services rendered solely for the benefit of the life beneficiary should not be paid out of the general estate unless the estate has been benefitted).

■ Pressman's first claim that he is entitled to receive fees for "services rendered in connection with the performance of duties as a fiduciary," (Pressman Mem. at 13), is flawed. Pressman apparently confuses the ordinary meaning of fiduciary, which is "a person having a duty, created by his undertaking, to act primarily for another's benefit in matters connected with such an undertaking," *Black's Law Dictionary* 753 (4th Ed. 1968), with its more limited meaning under Section 2110. The definition of fiduciary under the SCPA is as follows:

An administrator, administrator c.t.a., administrator d.b.n., ancillary administrator, ancillary executor, ancillary guardian, executor, guardian, preliminary executor, temporary administrator, testamentary trustee, to any of whom letters have been issued, and also the donee of a power during minority and a voluntary adminis-trator and a public administrator or county treasury to whom letters have been issued. N.Y.Surr.Ct.Pro.Act § 103.

Although Pressman undoubtedly believes that he is a fiduciary of the Steinvorth Estate as defined by the ordinary meaning of the word, there is no evidence that he carried out any of the prescribed fiduciary roles specified by the SCPA. As such, Pressman cannot be considered a fiduciary under the SCPA and therefore cannot recover his fees on that basis.

■ Pressman further argues that he is entitled to recover his fees and expenses incurred in the "defense" of the Earlier Actions because his efforts benefitted the Estate in that they "protecte[d]" and "preserve[d]" Estate assets. Pena, however, contends that because Pressman's actions did not result in a greater distribution to her, the Estate's sole heir, or cause her to receive additional funds, (Pena Mem. at 18–19), they did not benefit the Estate.

The test of whether an estate has been benefitted "is whether the distributees of the estate, in their capacities as such, have become entitled to receive greater sums from assets of the estate during administration than those that might have been expected without the applicant's efforts." *Application of Elias, Schewel & Schwartz*, 55 A.D.2d 448, 451, 390 N.Y.S.2d 739, 740 (4th Dep't 1977). Although Pressman argues that his "warding off an attack" against the assets of the Estate, as he was forced to do in the Earlier Actions, was beneficial to the Steinvorth Estate, his reliance on the one case cited to support this proposition, *In re Estate of Smolley*, 188 A.D.2d 535, 591 N.Y.S.2d 441 (2d Dep't 1992), is misplaced. In *Smolley*, the court held that an attorney who represented an individual named as executor in a will in an appeal from a disqualification order was entitled to legal fees payable by the estate because the appeal was a benefit to the estate. Here the court found that the executor owed a duty to the estate to ward off an "unjust attack" and to ensure the appointment of the executor named by the testatrix. *Id.* 591 N.Y.S.2d at 443. No such situation exists in the instant case that would justify the awarding of Pressman's legal fees.

Pressman's "defense" of the Earlier Actions did not result in any ascertainable benefit to the Estate either monetarily or in the assuring full compliance with Steinvorth's intentions as expressed in his will. The *Junkers* action merely established that Pressman had not improperly handled certain funds. (Pressman Am.Compl. ¶ 19.) The *Vulcan* suit resulted in funds being paid to the court and then to Vulcan rather than to Vulcan directly. (*Id.* ¶ 20.) Lastly, the pending *Facundo* suit has not resulted in any new assets coming into the Estate. (Pressman Am. Compl. ¶ 21.) Therefore, because Pressman cannot demonstrate that his actions have benefitted the Estate, he is not entitled to the recovery of his legal fees and expenses on that basis under Section 2110.

Pressman next contends that he should be compensated for his role as Steinvorth's agent before Steinvorth's death and as an agent on his Estate's behalf after his death. He also claims that he may recover fees from the Estate incurred in the Earlier Actions because those actions were brought against him as a result of actions he performed while an agent for Steinvorth. These contentions too are without merit.

Although Pressman, as Steinvorth's attorney, may have acted as his agent during Steinvorth's lifetime, any agency relationship ended with Steinvorth's death. *Bingham v. Zolt,* 683 F.Supp. 965, 976 (S.D.N.Y.1988) (Conboy, J.) (when an attorney is authorized to act as a legal representative, the death of the client terminates the relationship). Moreover, contrary to his assertion, Pressman never acted as an agent for the Steinvorth Estate, and therefore is not entitled to recover legal fees from it. *Pfeffer v. Gramse,* 50 N.Y.S.2d 74, 76 (Sup.Ct.1944) (after a client's death, an attorney may not act further until he is authorized to do so by the successor of interest of the former client). Indeed, under Section 2110, attorneys involved in an estate matter generally may not

recover their legal fees from the estate unless they have been retained by an estate representative, or interested persons, or have benefitted the estate. *In re Estate of Frazier,* 133 A.D.2d 513, 514, 519 N.Y.S.2d 985, 986 (4th Dep't 1987). As Pressman does not allege that he was authorized by Pena or anyone else to act for the Estate, (*see* Pena 3(g) ¶¶ 40–41; Pressman 3(g) ¶ 14), he is not entitled to any compensation for services rendered by him as an agent of the Steinvorth Estate.

Furthermore, Pressman may not recover fees incurred in the Earlier Actions on the basis that he was defending actions authorized by Steinvorth before his death. In the *Vulcan* and *Facundo* actions, it seems that Pressman was in essence a third party who found himself in possession of Steinvorth assets upon Steinvorth's death. Pressman's efforts to shield himself from any potential liability resulting from his turning over Steinvorth assets to the improper parties may have been avoided if Pressman had initially rendered an accounting of all Steinvorth assets in his possession and filed them with the court. Instead, Pressman became entangled in litigation, the expenses for which he now seeks compensation. Under these circumstances, Pressman is not entitled to recovery of his fees. *Application of Raphael,* 207 Misc. 535, 536, 139 N.Y.S.2d 26, 27 (Sur.Ct.1955) (under the predecessor to Section 2110, former attorney for decedent could not recover legal fees incurred defending himself "in long, drawn-out controversy with executrix").

Moreover, with respect to the *Junkers* action, Pressman is not entitled to recover from the Steinvorth Estate legal fees incurred defending himself against claims arising from actions he took as an agent before Steinvorth's death. Although Pressman cites authority to support this proposition generally[4], he does not cite any cases which would support the awarding of fees in a

---

4. Pressman cites, *Fawcett v. Fisher,* 148 Misc. 852, 265 N.Y.S. 661 (Sup.Ct.1933) and *Buckley v. New York,* 170 Misc. 412, 416, 10 N.Y.S.2d 650, 654 (1st Dep't 1939), *aff'd,* 289 N.Y. 742, 46 N.E.2d 352 (1943). In *Fawcett,* an action by a mortgagor for the cancellation of a mortgage assigned to mortgagor's agent, the court held

that an agent might be entitled to reimbursement for expenses incurred during the life of the agency. In *Buckley,* finding that an attorney's defense of personal liability suits was not the actions of an agent, the court held that he therefore was not entitled to reimbursement for his legal fees.

situation such as this one, where the principal is deceased, pursuant to Section 2110. Indeed such an award seems contrary to the requirements of Section 2110. Accordingly, Pressman's request for compensation for attorney's fees as authorized by Section 2110 must be denied in all respects.

*Recovery of Fees in Interpleader Action*

■ Pressman also seeks to recover his legal fees in the interpleader action under the general rule which allows the court, in its discretion, to award the stakeholder costs, including reasonable attorney's fees in an interpleader action. *Gould, Inc. v. Pension Benefit Guaranty Corp.*, 589 F.Supp. 164, 169 (S.D.N.Y.1984) (Motley, J.). However, such fees are typically available only where the stakeholder is: (1) disinterested (i.e. does not itself claim entitlement to any of the interpleader fund); (2) concedes liability in full; (3) deposits the disputed fund in court; and (4) seeks discharge, *United Bank of Denver, Nat'l Asso. v. Oxford Properties, Inc.*, 683 F.Supp. 755, 756 (D.Colo.1988). Pena therefore maintains that costs should not be awarded since few of these factors apply to Pressman.

Pena first argues that Pressman is not a disinterested party because he has a separate claim against the Estate for legal fees in the Earlier Actions and is a defendant in Pena's counterclaim for an accounting. However, she erroneously concludes that Pressman's interest in monies not comprising the interpleader fund makes him an interested party in the interpleader action. Regardless of Pressman's interest in other matters concerning the Steinvorth Estate, he has no claim to the monies interpleaded, and therefore is a disinterested party as far as this interpleader action is concerned. *Ferber Company v. Ondrick*, 310 F.2d 462, 467 (1st Cir.1962), *cert. denied*, 373 U.S. 911, 83 S.Ct. 1300, 10 L.Ed.2d 412 (1963) (request for interpleader fee may be appropriate to compensate disinterested stakeholder for initiating interpleader action, who would not be entitled to compensation from the fund for resisting counterclaim); *Chemical Bank v. Richmul Associates*, 666 F.Supp. 616, 619 (S.D.N.Y.1987) (Pollack, J.) (general rule that party properly invoking interpleader entitled

to costs and attorney's fees, particularly when that party asserts no claim upon the res deposited with the court).

Similarly Pena's assertion that Pressman is not disinterested due to his resistance to her counterclaim demanding a full accounting of all money received by him from Steinvorth is not sufficient in itself to warrant the denial of attorney's fees for commencing the interpleader. Again, this counterclaim does not directly affect the Interpleader Funds in that Pressman does not claim any interest in them.

Although Pena also argues that Pressman should not be awarded legal fees because he is somehow culpable for this litigation, she does not suggest that Pressman is responsible for controversy over who is Steinvorth's rightful heir, which is at the heart of this interpleader action. Thus, Pressman may not be denied legal fees on that basis.

Likewise, Pena's attempt to analogize Pressman's situation with that of an insurance company in an interpleader action is questionable. Although an insurance company need not be compensated for commencing an interpleader action because it is considered to be in the ordinary course of business, *see Travelers Indemnity Company v. Israel*, 354 F.2d 488, 490 (2d Cir.1965) (refusing to award fees to insurance company which was stakeholder of insurance proceeds and interpleaded them to avoid conflicting claims), such an analogy is inappropriate in a situation such as this one where an attorney has been charged with managing a client's funds. While handling a client's funds may be a regular part of an attorney's practice, there has been no showing that the costs associated with filing an interpleader action when there are competing claims to such funds fall under the ordinary "costs of doing business." *See Sparta Florida Music Group, Ltd. v. Chrysalis Records, Inc.*, 566 F.Supp. 321, 322 (S.D.N.Y.1983) (Lasker, J.) (record company entitled to attorney's fees for bringing interpleader action to determine party to whom it owed copyright royalties even though copyright disputes are common in the record industry, since legal fees and costs arising out of such disputes were unusual and not in the ordinary course of business). According-

ly, Pressman's award of legal fees also cannot be denied for that reason.

Although the court declined to discharge Pressman in the interpleader action due to his inability to adequately explain some of the transactions in his ledger, (Am.Op. at 4), which inadequacy to some extent may have prolonged this entire litigation, he is nevertheless entitled to his legal fees for commencing the interpleader especially as there has been no proof of wrongdoing on his part. However, it must be emphasized that by its very nature the interpleader fee is of a relatively small amount simply to compensate for initiating the proceedings. *Ferber Company,* 310 F.2d at 467; *John Hancock Mutual Life Insurance Co. v. Doran,* 138 F.Supp. 47, 50 (1956) (Kaufman, J.) ("[C]ounsel fees to stakeholders, when awarded, should be kept small ... in recognition of the minimal work necessary to institute a suit in interpleader"). Hence, though Pressman may be compensated for the costs of bringing the interpleader, he is not entitled to be reimbursed for any other expenses—i.e. the costs and fees associated with the Earlier Actions and his defense of the claims against him for an accounting. *See Chemical Bank,* 666 F.Supp. at 620 (fees given only for prosecuting interpleader claim, not for prosecuting other claim and defending against counterclaim). Therefore, upon his submission of an accounting of his costs in initiating the interpleader action, Pressman's expenses and fees will be reimbursed from the Interpleader Funds.

*Rule 11 Sanctions*

Pressman further maintains that he is entitled to sanctions under Rule 11, F.R.Civ.P. ("Rule 11"), for the fees and expenses incurred in the defense of the Earlier Actions, for the costs of bringing the interpleader and for the expense of defending himself against Pena's counterclaims. Pressman argues that Pena should be sanctioned for her role in all of these suits because they were meritless, premature in that they were instituted before the will contest was resolved and needlessly duplicative of each other.

A court may impose Rule 11 sanctions on an attorney and/or party, by the imposition of attorney fees, if a filing is made with an improper purpose or is not warranted under existing law. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). In pertinent part Rule 11 states:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

In deciding a Rule 11 motion, a court must apply an objective standard of reasonableness, *Derechin v. State University of New York,* 963 F.2d 513, 516 (2d Cir.1992), and must resolve all doubts about the pleading's viability in favor of the signer. *O'Malley v. New York City Transit Authority,* 896 F.2d 704, 706 (2d Cir.1990). However, if it is clear that the action was destined to fail based on the facts and existing precedent, and where no reasonable argument can be made to advance or change present law, Rule 11 requires sanction. *Norris v. Grosvenor Marketing, Ltd.,* 803 F.2d 1281, 1288 (2d Cir. 1986).

First of all, the court may not impose Rule 11 sanctions based on the filings in the Earlier Actions, i.e. the *Junkers, Vulcan* and *Facundo* actions due to any alleged improper conduct by Pena. Rule 11 sanctions cannot be imposed in the *Facundo* action because it is a state court action still pending in state court. *Mareno v. Jet Aviation of America, Inc.,* 970 F.2d 1126, 1128 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993) (state court findings made in action removed to federal court cannot form the basis for Rule 11 sanctions). Moreover, Rule 11 sanctions would be inappropriate in the *Junkers* and *Vulcan* actions because these cases are closed, were heard by other judges and at least putatively involved parties other than Pena. Indeed in

its Endorsement of August 9, 1988, the court noted that it would only consider imposing sanctions for the litigation instituted *"before [it]"* (emphasis in the original) if Pena lost the will contest. Under these circumstances, there is no basis for imposing Rule 11 sanctions for Pena's alleged improper conduct in the Earlier Actions.

▮ Nor may Pressman obtain sanctions against Pena for allegedly being forced to bring the interpleader action. As discussed earlier, bringing an interpleader action is the proper course to follow when a disinterested stakeholder seeks to relieve himself of funds which are the subject of disputing claimants. Thus, as it was in Pressman's own interest to commence the interpleader, the costs for which he will be reimbursed, Rule 11 sanctions against Pena for any alleged misconduct would be inappropriate. Furthermore, as Rule 11 is designed to deter improper pleadings, motions and papers, *see Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 130, 110 S.Ct. 456, 461, 107 L.Ed.2d 438 (1989) (Marshall, J., dissenting), it is curious that Pressman would seek sanctions against Pena for his filing an action which was entirely proper. Indeed, since only the attorney or party who signed a complaint may be sanctioned for its filing, neither Pena nor her attorneys may be sanctioned for commencing the interpleader action because it was Pressman's attorney, not they, who signed it. *Id.* at 126–127, 110 S.Ct. at 459–460.

When Pressman first sought to sanction Pena for bringing the accounting counterclaims in 1987, he argued that she acted prematurely. Now however, without addressing the issue of whether Pena brought the accounting claim prematurely without first awaiting the termination of the will contest, Pressman maintains that sanctions are still fitting because Pena's claims are duplicative of the claims asserted in the Earlier Actions, particularly the *Facundo* action, which he alleges are under her full control and merely an attempt by her to pick and choose the most favorable forum. (Larsen Aff. ¶ 23).

▮ Before getting to Pressman's latest assertion that Pena should be sanctioned for bringing duplicative suits, it is important to first address the propriety of Pena initiating the accounting claim in 1987. Although Pressman continues to maintain that Pena did not have full right to the Steinvorth Estate assets upon Steinvorth's death, (Pressman 3(g) Statement ¶ 8), he has not presented any evidence to contradict Pena's documentation that, under Venezuelan law, Pena, as universal heir and sole legatee of the Estate, became owner of the Estate assets immediately upon Steinvorth's death, regardless of whether his will was contested. (Pena Aff. Ex. G; Minkoff Reply Aff. ¶¶ 11–12.) Again, given these circumstances, there is no basis to sanction Pena under Rule 11.[5]

Pressman now stresses that Pena's assertion of the Facundo claims in her counterclaims in federal court was "an obvious waste and duplication of judicial resources and time" because the latter action basically mirrored the claims in the *Facundo* action filed in state court and failed to join indispensable parties. (Larsen Aff. ¶ 22.) In the *Facundo* action, the company Facundo, S.A. sued Pressman for allegedly withholding the SACCO bonds; in her counterclaim Pena sued to recover the bonds on her own behalf. In order to show that the counterclaims violated Rule 11, Pressman must show that Pena knew that the suit was frivolous or with an improper purpose at the time of the filing. *U.S. v. Int'l Brotherhood of Teamsters*, 948 F.2d 1338, 1344 (2d Cir.1991). Yet, it was reasonable for Pena to seek the Facundo claims for herself, especially since Pressman himself testified that he believed that the heir of the Steinvorth Estate had an interest in the bonds. (Pressman Dep. Tr. at 20, Pena Aff.Ex. E.) Only after this action began did Pena learn that the Facundo claim belonged to Facundo itself and thereafter did not pursue it. As Pressman has cited no authority to show that this conduct violated

---

5. Pressman also seems to suggest that Pena acted prematurely in seeking the accounting without first obtaining ancillary letters of administration. As the court has determined that ancillary letters are not necessary for Pena to proceed in New York courts, Pressman's assertion must be rejected.

Rule 11, Pena cannot be sanctioned for it. Thus, Pressman's motion for Rule 11 sanctions must be denied.

## VI.

In its Endorsement dated August 9, 1988, the court ordered Pena to post a bond of $75,000 for security for costs incurred in this litigation. In issuing its order, the court indicated that Pressman might be entitled to receive his litigation costs if the Venezuelan courts ruled against Pena and rendered her accounting proceeding a "needless waste of time, effort and funds." (Endorsement at 2.) However, now that Pena has prevailed in the Venezuelan courts and has been declared Steinvorth's universal heir, she requests that the Bond for Costs be vacated. As Pressman has put forth no legal argument as to why the bond for costs should remain in place, Pena's request to discharge the bond is granted.

### CONCLUSION

Plaintiff Pressman's motion for attorney's fees under Section 2110 of the New York Surrogate's Court Procedure Act and Rule 11, F.R.Civ.P., is denied. However, Plaintiff Pressman is entitled to attorney's fees and costs associated with the interpleader action, and shall be so awarded once he has made an accounting of his expenses to the court.

Defendant/counterclaimant Pena's motion pursuant to Rule 56, F.R.Civ.P., for summary judgment in the interpleader action is granted. The court clerk shall award her the Interpleader Funds (plus accrued interest), minus the costs incurred by Plaintiff Pressman in bringing this action, once these costs have been determined.

Plaintiff Pressman's motion to dismiss Pena's accounting claims pursuant to Rule 12(b), F.R.Civ.P., is denied with the exception of claims relating to Facundo; these claims are dismissed without prejudice. With respect to Pena's other accounting claims, Pressman is to produce an index with the names of the entities (nominee corporations) whose documents are found within the Withheld Documents, a brief description of the nature of each document, a short explanation as to whether or not the entity is connected to Steinvorth, and if the entity is not connected, clarification as to why it is not. Once Pena has sufficiently established Steinvorth's ownership interests in the all or some of these entities, Pressman shall produce the relevant documents.

Lastly, defendant/counterclaimant Pena's request for a discharge of the Bond for Costs is granted.

IT IS SO ORDERED.