[618 NYS2d 635]

ALICE F. JACKSON, Individually and as Executrix of DORA F. Izsak, Deceased, Appellant, v STEVEN A. KESSNER et al., Respondents.

First Department, November 10, 1994

APPEARANCES OF COUNSEL

*Eugene A. Wolkoff* of counsel, New York City *(Callahan & Wolkoff, P. C.,* attorneys), for appellant.

*Paul H. Appel,* New York City, for respondents.

## OPINION OF THE COURT

Ross, J.

This appeal presents two issues for our review. The first concerns whether an individual who is both the executrix and sole beneficiary of a decedent's estate can maintain an action for malicious prosecution in her individual capacity, where the underlying suit complained of was commenced against her solely in her capacity as executrix and involved a parcel of land that was the sole asset of the estate. The second, is whether, in this particular matter, so-called "new evidence" presented by the defendants was properly relied upon by the trial court to set aside the jury's verdict awarding compensa-

tory damages to the plaintiff. For the reasons that follow, we hold that dismissal of the cause of action asserted by the plaintiff in her individual capacity before trial was appropriate. Further, we hold that it was error to grant the defendants' motion to set aside the jury's verdict awarding compensatory damages to plaintiff in her capacity as executrix.

Plaintiff is the executrix and primary beneficiary of the estate of her deceased mother, Dora Frank Izsak. The sole asset of the estate is a parcel of real property located at 125 East 62nd Street, New York, New York. In her capacity as executrix of the estate, the plaintiff entered into a contract for the sale of the property with defendant United Development International, Inc. (UDI). Steven A. Kessner, who is identified in the complaint as the sole shareholder of UDI, apparently guaranteed the obligations of UDI under the contract of sale. Pursuant to the aforementioned contract dated April 28, 1989, UDI agreed, *inter alia,* to purchase 125 East 62nd Street for $1.1 million and gave a $45,000 down payment. However, when UDI failed to complete the Capital Gains Tax Questionnaire or appear for the closing on the adjourn date, the plaintiff declared a default and, pursuant to the contract of sale, retained the down payment for the estate. Purchasers, defendants herein, commenced an action for damages and filed a notice of pendency. After the notice of pendency was vacated, purchasers filed a second notice of pendency and belatedly asserted a claim for specific performance of the contract. Plaintiff promptly offered defendants an opportunity to close but defendants again failed to appear. By order and judgment entered July 18, 1990, Supreme Court, New York County (William J. Davis, J.), granted the plaintiff's motion for summary judgment, dismissed the defendants' complaint, which served as the basis for the aforementioned notices of pendency, and declared the real estate contract of sale terminated as of August 11, 1989 due to purchasers' failure to close. This Court unanimously affirmed the July 18, 1990 decision of the Supreme Court *(see, Kessner v Estate of Izsak,* 170 AD2d 351).

Plaintiff commenced the underlying action for malicious prosecution, in her capacity as executrix of the estate and on behalf of herself individually, based primarily on the allegation that the sale of the property for $999,000 to a second buyer, one Adam Gordon, fell through upon Gordon's discovery of the second notice of pendency filed by the defendants. In the order appealed, entered August 9, 1993, before the trial of the action commenced, the trial court (Gammerman, J.)

granted the defendants' motion for summary judgment in part, and dismissed the malicious prosecution action maintained by the plaintiff in her individual capacity.

■ In connection with the appeal from that order, plaintiff argues that, while defendants sued her only in her capacity as executrix in the malicious prosecution action complained of *(see, Kessner v Estate of Izsak, supra)*, the damages caused by defendants' malicious acts (i.e., the frustration of sale of the estate property to Gordon), were actually suffered by her in her individual capacity as beneficiary of the estate. Plaintiff's theory is that the beneficiary of an estate should be allowed to maintain an action for malicious prosecution against third parties whose litigation against the estate allegedly caused a diminution of value of estate assets. While plaintiff's specific theory, as the plaintiff's counsel indicates, may be novel in this State, such an action is insupportable by the law as it applies to malicious prosecution and estates.

It is axiomatic that only a party to the proceeding complained of is entitled to maintain an action for malicious prosecution *(Crown Wisteria v F.G.F. Enters. Corp.,* 168 AD2d 238, 241; *see,* 59 NY Jur 2d, False Imprisonment and Malicious Prosecution, § 48, at 311). The action complained of as a malicious prosecution herein, was an action involving the sale of an estate asset by the plaintiff executrix. While plaintiff is both the sole beneficiary and the executrix of her mother's estate, the law is clear that, in her individual capacity as beneficiary, plaintiff could have no part in that action. "It is elementary that the executors or administrators represent the legatees, creditors and distributees in the administration of the estate; that their duty is to recover the property of the estate; and that the legatees and next of kin are concluded by their determination in respect to actions therefor and have no independent cause of action, either in their own right or the right of the estate" *(McQuaide v Perot,* 223 NY 75, 79).

Virtually the same theory of recovery was presented to this Court and rejected in the analogous situation of *Wierdsma v Markwood Corp.* (53 AD2d 581). In that case, plaintiffs were the decedent's two sons who sought to recover damages from the defendants who were the decedent's financial advisors. The cause of action was based on the allegations that said defendants had fraudulently and negligently represented to the deceased that she owned sufficient property to satisfy all of the bequests in her will, including those made to the plaintiffs, without the necessity of her further exercising a

testamentary power of appointment. Plaintiffs claimed that as a consequence of defendants' advice they were deprived of specific legacies as well as residuary interests in their mother's estate. With reference to plaintiffs' claims and their standing to sue, this Court held: "The essence of their complaint is that because of defendants' wrongful advice, given to decedent as well as to her entire family, the size of her estate was not as large as it would have been had she exercised the power of appointment. Plaintiffs' claim is thus no different from that of any other legatee or beneficiary who would have benefited had the estate been larger and is, in reality, merely one to recover estate assets. Such a claim is maintainable by the executors of the estate. The legatees and beneficiaries thereof have no independent cause of action either in their own right or in the right of the estate to recover estate property [citation omitted]" (53 AD2d, *supra,* at 581-582). Similarly, in the case at bar, plaintiff's claim in her individual capacity is actually a claim to recover estate assets, i.e., a claim that the property would have sold for a higher price and that the estate would have been worth more, had the sale to Gordon been concluded.

It is of no consequence that the plaintiff is the sole beneficiary of the estate. While it is certainly true that plaintiff in her capacity as the only beneficiary is the only one ultimately affected by a diminution of the value of the estate, the distinction between an individual's status as fiduciary of an estate and beneficiary cannot be disregarded. It is well settled that a beneficiary, absent extraordinary circumstances such as when a fiduciary unreasonably refuses to act *(see, McQuaide v Perot, supra,* at 80), cannot act on behalf of the estate or exercise the fiduciary's rights with respect to estate property, even if beneficiary and fiduciary are one and the same person. *(Joint Props. Owners v Deri,* 113 AD2d 691.)

In *Joint Props. Owners v Deri,* the decedent was the tenant of record of a rent-stabilized apartment. The respondent in the holdover proceeding was the decedent's son and the executor of her estate. He and his family had not resided with the decedent in the apartment so as to qualify to succeed to her leasehold rights. Consequently, the leasehold interest passed as personal property to the estate (EPTL 13-1.1), which remained liable for the payment of rent *(see,* 113 AD2d 691, 693, *supra),* and the right to possession of the demised premises for the remainder of the lease term passed to the executor (decedent's son), solely in his capacity as representative of the

deceased tenant *(Remford Corp. v Rosenfeld,* 274 App Div 769). Nevertheless, the decedent's son occupied the demised premises with his family in his individual capacity. In holding that the respondent son's occupation of the apartment in his individual capacity constituted a violation of a substantial obligation of the tenancy, and that the respondent had no entitlement to a renewal lease this Court stated that: "Since the son, as executor, has placed a stranger to the lease, i.e., himself individually and his family, in possession without the landlord's consent, as required by Real Property Law § 236, he has violated a substantial obligation of tenancy, as a matter of law, and the landlord is entitled to a judgment of possession." (113 AD2d 691, 695, *supra.)*

*MacDonald v Joslyn* (275 Cal App 2d 282, 79 Cal Rptr 707), a California appellate court decision heavily relied upon by the plaintiff, is not contrary to the above analysis. Moreover, plaintiff's reliance upon that case is misplaced as that matter involved a completely distinct situation. In *MacDonald,* the executor of an estate filed an action as an individual to recover damages, which included the loss of commissions he otherwise would have earned as executor, trustee's fees, and damages for injury to his reputation and mental anguish caused by the defendant, who was the oldest son of the testator. The plaintiff was not suing to recover anything on behalf of the estate or as the personal representative of the estate. The court in *MacDonald* held essentially that the executor could maintain the malicious prosecution action in his individual capacity, because he was, in one sense, a defendant in the will contest action, which was the basis of the malicious prosecution action; i.e., he was aggrieved by the conduct of a will contestant who filed the contest for a spiteful purpose and without probable cause. There is no fair reading of *MacDonald (supra)* that would support the plaintiff's position herein. In addition, it should be noted that the recent case of *Pillsbury v Karmgard* (22 Cal App 4th 743, 27 Cal Rptr 2d 491), which involves a very similar set of facts to the case at bar, demonstrates that California's law with respect to malicious prosecution actions by beneficiaries against third parties is the same as the law in New York. In *Pillsbury,* the beneficiary of a trust brought a malicious prosecution action against a prospective buyer of trust real property who had unsuccessfully sued the trustee for specific performance in connection with the sale. Like this case the suit against the trustee interfered with the sale of the realty to a second

buyer. When the trustee declined to sue the first buyer the beneficiary commenced the action for malicious prosecution. The court held that the beneficiary had no standing to bring the action on behalf of the trust. The rule relied upon by the California court is the same as that stated in *McQuaide v Perot (supra)*, i.e., " 'absent special circumstances, an action prosecuted for the benefit of a trust estate by a person other than the trustee is not brought in the name of a real party in interest and is demurrable' [citation omitted]" (22 Cal App 4th 743, 753-754, 27 Cal Rptr 2d 491, 495, *supra)*. The other cases relied upon by the plaintiff from other jurisdictions are either unpersuasive or inapplicable to the matter at bar.

■ Therefore, the trial court's dismissal of the malicious prosecution action brought by the plaintiff in her individual capacity was proper. However, the second order appealed, which set aside the reduced award of compensatory damages, was erroneous.

By order to show cause dated November 10, 1993, three months after defendants' motion pursuant to CPLR 4404 was denied, defendants moved pursuant to CPLR 5015 (a) (2) and (3) to vacate the jury's verdict in favor of the plaintiff, as executrix, based mainly upon what defendants describe as new evidence. In the affirmation submitted in support of the motion it was stated that "[d]efendants have just obtained an affidavit of Adam Gordon * * * in which he [Gordon] says that he was deceived by plaintiff herself and the broker as to the number of tenants in the building". The affirmation states, further, that according to Gordon, he was never told about the notice of pendency and that his decision not to pursue the transaction was based upon his determination that due to the number of tenants in the building, it was worth less than the agreed-upon price. The reason put forth by defendants' attorneys for their failure to obtain the information contained in Gordon's affidavit earlier, was that both plaintiff and Mr. Massey, the real estate agent who represented plaintiff on the sale to Gordon, stated during their depositions that there was no signed contract with Gordon. In addition, the defendants rely on the fact that they received an unsigned copy of the contract during discovery.

Thus, in the second order appealed, entered March 14, 1994, the trial court (Gammerman, J.) granted defendants' motion to set aside the jury's verdict for compensatory damages and directed that there be a new trial on the issue of compensatory damages only. The trial court's decision was based upon

its determination that there was an excusable neglect on defendants' part in failing to locate Mr. Gordon and have him testify at trial. It should be noted that the trial court had previously denied the defendants' motion pursuant to CPLR 4404 to set aside the jury's verdict in favor of the plaintiff in the amount of $387,375 ($237,375 of which was for compensatory damages and $150,000 of which was for punitive damages), but reduced the award of compensatory damages to $124,000, which reflected the difference between the price offered by Gordon and the price at which the property eventually sold.

It is well settled that the movant on a CPLR 5015 motion based on newly discovered evidence must demonstrate the genuineness and materiality of the evidence, and that, despite due diligence, the evidence could not have been discovered in preparing for the trial or in time to move for a new trial pursuant to CPLR 4404 (CPLR 5015 [a] [2]; *H & Y Realty Co. v Baron,* 193 AD2d 429, 430; *Marine Off. of Am. Corp. v Regal Accessories,* 162 AD2d 232, 233). Here, the defendants failed to demonstrate either, that they could not have discovered the evidence in question prior to either the trial or their CPLR 4404 motion or, that there was any fraud or misconduct, etc., on behalf of the plaintiff.[1]

The record reflects that at trial, Mr. Massey testified that he had been mistaken when he testified at his deposition that Gordon did not sign the contract. Massey stated that Gordon had, in fact, signed the contract but had returned it without a check. Samuel Panzer, the attorney who represented Mr. Gordon in the real estate transaction, testified that the contract of sale for the property had been signed at the offered price, but that the offer was later withdrawn upon the discovery of the notice of pendency. Mr. Panzer also testified that he recognized the copy of the signed contract offered into evidence, as the same one he saw Gordon sign. The contract was admitted into evidence during Panzer's testimony over defense counsel's objection.

Although defendants received an unsigned copy of the contract with Gordon during discovery, that contract alone was sufficient notice to alert defendants to the significance of

---

1. Fraud and/or misrepresentation on the part of the plaintiff, in failing to call defendants' attention to Mr. Gordon during discovery, is presumably the basis for defendants' CPLR 5015 (a) (3) claim on their motion before the trial court.

Gordon as a potential witness. Moreover, the testimony of Mr. Massey and Mr. Panzer at trial and the introduction of the contract into evidence at trial, over defense counsel's objection, provided the defendants with more than sufficient notice of Gordon's importance prior to the CPLR 4404 motion. Finally, the probative value of Gordon's affidavit is suspect as well. For example, while Gordon states in the affidavit that he was unaware that the building was occupied, the contract contains Gordon's signature below a list of tenants in the building.[2]

Therefore, the order appealed entered March 14, 1994, which granted the defendants' CPLR 5015 motion insofar as to set aside the reduced award of compensatory damages to plaintiff as executrix, based on the newly obtained affidavit of Adam Gordon, was erroneous.

Accordingly, the order of Supreme Court, New York County (Ira Gammerman, J.), entered August 9, 1993, is unanimously affirmed, and the order of the same court and Justice, entered March 14, 1994, which granted the defendants' motion to set aside the award of compensatory damages, is unanimously reversed, on the law and the facts and in the exercise of discretion, and the award of compensatory damages, as reduced by the trial court, by order dated September 30, 1993, and so ordered on or about October 26, 1993, is reinstated.

MURPHY, P. J., ELLERIN, NARDELLI and WILLIAMS, JJ., concur.

Order, Supreme Court, New York County, entered August 9, 1993, unanimously affirmed, and order, same court and Justice, entered March 14, 1994, which granted the defendants' motion to set aside the award of compensatory damages, unanimously reversed, on the law and the facts and in the exercise of discretion, and the award of compensatory damages, as reduced by the trial court, by order dated September 30, 1993, and so ordered on or about October 26, 1993, reinstated.

---

2. There is no claim that Gordon's signature on the contract in the record was forged.