■ THE PURDUE FREDERICK COMPANY et al., Appellants, v STEADFAST INSURANCE COMPANY et al., Respondents, et al., Defendant. [836 NYS2d 28]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered July 26, 2005, which granted the motion and cross motions of defendants to dismiss the amended complaint and declared that none of them had a duty to defend or indemnify plaintiffs in specified underlying actions, and denied plaintiffs' cross motion for summary judgment declaring that they were entitled to such defense, unanimously affirmed, with costs.

The court relied on two separate grounds for finding that

defendants Gulf Underwriters and National Union Fire did not owe plaintiffs a duty to defend or indemnify them in the underlying litigation. In addition to finding that the underlying claims did not fall within the "malicious prosecution" provision of the insurance policies, the court noted that "National and Gulf would not be required to defend in any event, as their policies are excess to Steadfast's primary insurance," citing *General Motors Acceptance Corp. v Nationwide Ins. Co.* (4 NY3d 451, 456 [2005]), which stands for the proposition that an excess carrier may protect its interest by participating in the defense, but, unlike a primary insurer, has no obligation to do so. Plaintiff fails to challenge the alternative ground for the court's decision. Thus, plaintiffs' appeal must fail.

In any event, plaintiffs seek a defense under the policy coverage for personal injury based on, among other things, the unambiguous tort of malicious prosecution (*see QSP, Inc. v Aetna Cas. & Sur. Co.*, 256 Conn 343, 773 A2d 906 [2001]). Unlike a general insurance policy, where coverage is stated in broad terms and is subject to clearly defined exceptions, personal injury coverage is designed only for defined risks, and is thus limited to claims actually arising out of the torts enumerated in the policy (*see County of Columbia v Continental Ins. Co.*, 83 NY2d 618 [1994], *affg* 189 AD2d 391 [1993]).

The elements of malicious prosecution consist of the initiation of a legal action by the defendant against the plaintiff, begun with malice and without probable cause to believe it can succeed, and ending in the accused's favor (*Broughton v State of New York*, 37 NY2d 451, 457 [1975], *cert denied sub nom. Schanbarger v Kellogg*, 423 US 929 [1975]). Such legal action can even be civil in nature, as long as it interferes in some way with the plaintiff's person or property (*see O'Brien v Alexander*, 101 F3d 1479, 1484 [2d Cir 1996]). A plaintiff asserting malicious prosecution must also allege and prove special damages (*Engel v CBS, Inc.*, 93 NY2d 195 [1999]). It is further "axiomatic that only a party to the proceeding complained of is entitled to maintain an action for malicious prosecution" (*Jackson v Kessner*, 206 AD2d 123, 126 [1994], *lv dismissed* 85 NY2d 967 [1995]).

In the underlying litigations, however, the claims are not for malicious prosecution, which the claimants in those actions would have no standing to bring, but rather for antitrust violations. That they refer to certain "sham litigation" allegedly brought by plaintiffs herein to maintain their monopoly on the manufacture and sale of the drug OxyContin does not transform the antitrust claims into ones for malicious prosecution (*see*

*QSP, Inc. v Aetna Cas. & Sur. Co.*, 256 Conn 343, 773 A2d 906 [2001], *supra*). Concur—Mazzarelli, J.P., Saxe, Sullivan, Nardelli and Gonzalez, JJ.