[859 NYS2d 35]

Tara Baker, Appellant, v Bronx Lebanon Hospital Center et al., Respondents.

First Department, May 20, 2008

**APPEARANCES OF COUNSEL**

*Wallace & Associates, P.C.*, White Plains (*Larry Wallace* of counsel), for appellant.

*Shaub, Ahmuty, Citrin & Spratt, LLP*, New York City (*David Kaplan, Christopher Simone* and *Deirdre E. Tracey* of counsel), for Bronx Lebanon Hospital Center, respondent.

*Kanterman, O'Leary & Soscia, LLP*, New York City (*Kenneth A. Laub* of counsel), for Larry Ham, M.D., and others, respondents.

**OPINION OF THE COURT**

ANDRIAS, J.

On February 6, 2002, three days after she gave birth to her third child in defendant hospital, Trina Baker died intestate, leaving three infant children, Anthony, Damien, and the

newborn Katrina, as her sole distributees. As pertinent to this appeal, plaintiff, who is the decedent's sister, was appointed by the Bronx County Family Court as the guardian of Katrina's person on April 17, 2002. Thereafter, on August 20, 2004, she was appointed as the guardian of Katrina's property by the Bronx County Surrogate, and on November 4, 2004, she was appointed as administrator of her late sister's estate by the Surrogate. This action for medical malpractice and wrongful death was commenced by filing on February 1, 2005.

In granting defendants summary judgment dismissing plaintiff's causes of action for medical malpractice and wrongful death, both of which accrued on the date of the decedent's death, the motion court, in a decision that is not contested on appeal, correctly held that the infancy toll of CPLR 208 did not apply to the medical malpractice cause of action, which belongs to the decedent's estate, and that that cause of action was not revived by the fact that no representative for the estate was appointed until November 4, 2004, three months after the expiration of the 2½-year limitations period. As to plaintiff's cause of action for wrongful death, the court, citing *Hernandez v New York City Health & Hosps. Corp.* (78 NY2d 687, 693 [1991]), held that the infancy toll of CPLR 208 terminated April 17, 2002, when plaintiff was appointed as guardian of the person of Katrina by the Family Court and thus that that cause of action was also untimely, having been commenced almost 10 months after the limitations period expired.

On appeal, plaintiff argues for the first time that the court erred in finding that the infancy toll of CPLR 208 terminated upon her appointment as guardian of the person, rather than upon her appointment as guardian of the property, which would have made this action timely. Defendants respond that plaintiff's argument is unpreserved and argue that, in any event, there is no distinction between a "guardian of the person" and a "guardian of the property" insofar as it relates to the tolling of the limitations period for wrongful death actions. Plaintiff's arguments, they contend, stem from a misinterpretation of *Hernandez* and its progeny. They argue that the Court of Appeals identified the occasion of there being a *potential* personal representative and not the issuance of letters of administration as the controlling event for determining when the toll ceased and that when plaintiff was appointed as guardian of the infant's person that potential existed and ended the toll. For the following reasons, we disagree and reinstate plaintiff's cause of action for wrongful death.

Surrogate's Court "has power over the property of an infant and is authorized and empowered to appoint a guardian of the person or of the property or of both of an infant whether or not the parent or parents of the infant are living" (SCPA 1701). "The same person may be appointed guardian of both the person and the property of the infant or the guardianship of the person and of the property may be committed to different persons" (SCPA 1707 [1]). Family Court's jurisdiction, however, is limited by the Constitution to the guardianship of the person of a minor (NY Const, art VI, § 13 [b] [7]), and there is no provision in the Family Court Act for the appointment of guardians of the property of infants. Whereas guardianship of the person of an infant implies custody and control over the person of the infant with a concurrent duty to watch over the general welfare of the infant, a guardian of an infant's property is required to "protect, preserve and manage" the infant's property throughout minority so as to provide for the infant's personal, health and educational necessities (see SCPA 1723 [1]).

Pursuant to EPTL 5-4.1, the personal representative of an estate has two years, measured from the date of death, in which to commence an action for damages for the wrongful death of the decedent on behalf of the decedent's distributees. Where there is no representative to commence a wrongful death action on behalf of an infant intestate distributee before that time, CPLR 208 tolls the two-year limitations period for commencing such action. Such toll has been construed "to apply until the earliest moment there is a personal representative or potential personal representative who can bring the action, whether by appointment of a guardian or majority of the distributee, whichever occurs first" (*Hernandez v New York City Health & Hosps. Corp.*, 78 NY2d 687, 693 [1991]).

An action for wrongful death may be brought by the decedent's "personal representative" (EPTL 11-3.2 [b]), which term includes a person who has received letters to administer the decedent's estate, but not a guardian during minority (EPTL 1-2.13). In setting the order of priority for granting letters of administration, SCPA 1001 (2) provides that if the sole distributee is an infant, his or her "fiduciary . . . shall be granted letters of administration." However, while "fiduciary" is defined as including a guardian (SCPA 103 [21]), there is no express statutory preference in the granting of letters of administration as between the guardian

of the person and the guardian of the property of an infant distributee. Nevertheless, the general legislative intention to give only persons interested the right to administer indicates a preference in this respect in favor of the guardian of the infant's property (*Matter of Blowstein*, 147 Misc 111 [1933]). To that end, SCPA 1001 (2) provides that the Surrogate may deny letters to the guardian of the person only (*cf. Weed v St. Joseph's Hosp.*, 245 AD2d 713 [1997] [putative father denied letters of administration for mother's estate, to bring wrongful death action on behalf of her infant distributee, because he lacked appointment as guardian of infant's property]). A similar rationale is reflected in SCPA 402 (1), which provides that "[a]n infant may appear by the guardian of his property," and CPLR 1201, which provides that, "[u]nless the court appoints a guardian ad litem, an infant shall appear by the guardian of his property."

To the extent that defendants rely on *Baez v New York City Health & Hosps. Corp.* (80 NY2d 571 [1992]) for the proposition that once appointed guardian, a person becomes a potential personal representative of the decedent's estate due to her or his immediate availability to receive letters of administration, such reliance is misplaced. The Court there found that, where the plaintiff's deceased daughter's will named the plaintiff as the executor of the daughter's estate and stated that she should be appointed guardian of the daughter's infant children, CPLR 208 did not apply to toll the limitations period because the plaintiff could have timely sought appointment as the personal representative of the decedent's estate and commenced the actions on the infants' behalf after the death of their mother. Likewise, in *Ortiz v Hertz Corp.* (212 AD2d 374 [1995]), a decision presumably based upon the premise that ordinarily a surviving parent becomes the child's general guardian by operation of law (*see* Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 81), this Court held that as the natural mother of the decedent's infant children, the plaintiff was duty bound to seek letters of administration on behalf of the decedent's infant distibutees before the running of the limitations period, particularly since she had retained counsel on behalf of such distributees within 60 days of the decedent's death. That decision has been criticized as resting on "the incorrect premise that the mother and 'natural guardian' of the infant distributee was, even before being appointed his 'legal guardian', 'duty bound' to seek let-

ters of administration on behalf of the distributee" (*Matter of Boles v Sheehan Mem. Hosp.*, 265 AD2d 910, 913 [1999]). As pointed out by the Fourth Department,

> "the legal office of 'fiduciary' (*see*, SCPA 1001 [2]) does not include a parent or other 'natural guardian' of an infant, but refers to a court appointed legal guardian of the infant's property or person. Under *Hernandez* (*supra*), it is court appointment as legal guardian that is dispositive, not blood ties or natural guardianship. We thus reject defendants' assertion that plaintiff's mother was 'duty bound' to commence the action within two years of death" (*id.* at 912 [some citations omitted]).

Here, even if the rationale of *Ortiz* were deemed correct, having been appointed solely as the guardian of the infant's person by the Family Court, plaintiff had no such ability to obtain letters of administration. Thus, before a personal representative of her sister's estate could be appointed, a guardian of Katrina's property first had to be appointed.

Defendants argue that relevant cases such as *Weed v St. Joseph's Hosp.* (245 AD2d 713 [1997]) and *Matter of Rivera v Westchester County Med. Ctr.* (222 AD2d 680 [1995], *lv denied* 88 NY2d 808 [1996]) do not discuss or make any distinction between guardians of the person and guardians of the property. However, there was no need to, because the operative date used in both cases was the date of the plaintiff's appointment as guardian of the property for the infant. While other cases speak of "guardians" without differentiating between the different types (*see e.g. Tuyet Ngoc Nguyen v 230 Park Invs., LLC*, 19 AD3d 295 [2005]), it is clear that the guardians referred to are considered guardians of the infant's property. Since judicial opinions should generally be read in light of their facts (*Hernandez*, 78 NY2d at 691), we note that the record in *Hernandez* reflects that, although the plaintiff was simply referred to as the "guardian" in the Court's opinion, she had been appointed by the Surrogate as the guardian of both the person *and* the property of the infant.

As explained by the Court in *Henry v City of New York* (94 NY2d 275, 283 [1999]):

> "*Hernandez* concerned an 'unusual situation' where there was no personal representative of the decedent's estate and the infant sole distributee

was not eligible to receive letters of administration pursuant to SCPA 707 (1) (a). *No one* could commence a wrongful death action until a guardian was appointed for the infant sole distributee. Thus, the infant's disability was directly linked to identifying a prospective plaintiff (an administrator) and only the appointment of a guardian or the infant's eighteenth birthday could resolve the dilemma."

This is one of those "unusual" situations.

■ Since at the time of her mother's death Katrina was an infant, no one was qualified or eligible to receive letters of administration until a guardian was actually appointed for her. Thus, it is apparent that before a personal representative could be appointed for her mother's estate in order to bring the wrongful death action, a guardian of the property had to be appointed for Katrina. Upon such appointment, there existed for the first time "a potential personal representative entitled to 'commence an action' (*see,* CPLR 208; SCPA 1001 [2], [6])" (*Hernandez,* 78 NY2d at 694). Thus, the infancy toll of CPLR 208 terminated August 20, 2004 upon plaintiff's appointment by the Surrogate as guardian of the property of the decedent's infant child, not April 17, 2002, when she was appointed guardian of the child's person by the Family Court. The wrongful death action filed on February 1, 2005, less than two years after plaintiff was appointed, was therefore timely commenced.

■ As to defendants' lack of preservation argument, plaintiff raises a legal argument that appears on the face of the record and could not have been avoided if brought to defendants' attention at the proper juncture, the record on appeal is sufficient for its resolution, and the issue is determinative (*see Chateau D' If Corp. v City of New York,* 219 AD2d 205, 209 [1996], *lv denied* 88 NY2d 811 [1996]). We decline, however, to consider the issue, again not raised below, of the effect, if any, of the adoption of Katrina's siblings in 2002 and 2004, respectively.

Accordingly, the order of the Supreme Court, Bronx County (Alan J. Saks, J.), entered December 7, 2006, which, insofar as appealed from as limited by the briefs, granted defendants' motion for summary judgment dismissing plaintiff's wrongful death cause of action as time-barred, should be reversed, on the law, without costs, defendants' motion denied, the cause of ac-

tion for wrongful death reinstated, and the matter remanded for further proceedings.

LIPPMAN, P.J., ANDRIAS, WILLIAMS and McGUIRE, JJ., concur.

Order, Supreme Court, Bronx County, entered December 7, 2006, reversed, on the law, without costs, defendants' motion for summary judgment dismissing the wrongful death cause of action as time-barred denied, said cause of action reinstated, and the matter remanded for further proceedings.