OPINION OF THE COURT
Nardelli, J.
The genesis of this litigation occurred in 1935 in pre-war Germany, when Paul von Mendelssohn-Bartholdy, a German-Jewish banker, was allegedly forced to sell a valuable Picasso painting to a German art dealer. The issue before this Court is whether plaintiff Julius Schoeps, a German national, may pursue his claim against defendant, which acquired the painting in 1995, without first being appointed a representative of Bartholdy’s estate. We hold that plaintiff lacks standing, and thus affirm the Supreme Court’s dismissal of the action.
In his proposed third amended complaint, which is unverified, plaintiff Julius Schoeps states that he is a great-nephew of Bartholdy, and an heir to 12.5% of the estate. He further alleges that all of the living heirs have assigned their claims to him in this matter, but has not provided any proof of such assignments. Bartholdy was a member of a prominent Jewish family in Germany, and included among his forebears the composer Felix Mendelssohn. Prior to his death in 1935 he owned an extensive art collection, including a painting by Pablo Picasso entitled “The Absinthe Drinker (Angel Fernandez de Soto).” According to Schoeps, Bartholdy had sold the painting to a German art dealer in 1935 under duress resulting from Nazi persecution.
Defendant, The Andrew Lloyd Webber Art Foundation, is an express charitable trust established under the laws of England *139 and Wales, and is the current owner of the painting. It acquired the artwork in 1995 in an open auction by Sotheby’s in New York.
The Foundation sought to sell the painting at a November 8, 2006 auction at Christie’s in New York. Plaintiff filed a complaint against defendant in the United States District Court for the Southern District of New York, and sought temporary restraining orders to stop the sale of the painting and to prevent defendant from taking it out of the United States. That complaint was dismissed for lack of federal jurisdiction on November 7, 2006, and the restraining orders were lifted. Nonetheless, due to the controversy, the Foundation withdrew the painting from auction. It was returned to London on November 8, 2006.
On November 8, 2006, plaintiff commenced this action in Supreme Court, New York County with the filing of a summons and complaint. On November 9, 2006, he filed a first amended complaint. The complaints asserted causes of action for restitution, constructive trust, declaratory relief, replevin and conversion. The Foundation claims that it was never served with either complaint.
On March 5, 2007, plaintiff filed a second amended complaint without seeking or being granted leave to do so. Counsel for defendant returned the second amended complaint.
On or about April 5, 2007, defendant moved to dismiss the first amended complaint upon the ground, inter alia, that plaintiff lacked standing to bring the action because he had neither been appointed a representative of decedent’s estate, nor did he have any other personal capacity for bringing such an action.
In opposition, Schoeps maintained that, under German law, ownership rights vested immediately in the heirs, and the appointment of a personal representative of the estate was thus unnecessary. He further contended that Bartholdy did not have a cause of action in Nazi Germany during his lifetime, and, therefore, his individual heirs had the right to file suit on their own behalf.
On May 2, 2007, plaintiff moved for leave to file a third amended complaint. The Foundation responded that the amended pleadings did not cure plaintiffs lack of standing and capacity to bring the action.
After consolidating the motions, the court granted the motion to dismiss, and denied as moot the motion for leave to file an *140 amended pleading (17 Misc 3d 1128[A], 2007 NY Slip Op 52183[U]). The motion court found that plaintiff lacked standing since he had not been appointed a personal representative of the estate pursuant to Estates, Powers and Trusts Law § 11-3.2 (b) and § 13-3.5. Although the court agreed with plaintiffs contention that any cause of action asserted by decedent during his own lifetime in Nazi Germany would have been futile, it observed that the wrong itself nevertheless occurred during his lifetime, and any rights to the painting necessarily passed to his estate at the time of his death. The court also rejected plaintiffs argument that he possessed standing because title to the painting had vested immediately in the decedent’s distributees.
Section 11-3.2 (b) of the Estates, Powers and Trusts Law provides, in pertinent part, that an action for injury to person or property belonging to a decedent may be maintained by a personal representative of the decedent. EPTL 13-3.5 (a) (1) provides that a personal representative of a foreign decedent who seeks to maintain a cause of action in New York must, within 10 days after commencing the action, file a copy of the letters issued to the representative, duly authenticated as prescribed by CPLR 4542. If the action is not brought by a personal representative, the individual is required to submit an affidavit setting forth the facts which authorize him to act for the decedent, along with such other proof as the court may require.
In this case, as noted previously, the complaint is not verified by plaintiff, and there is no affidavit from Schoeps in the record that would otherwise comply with EPTL 13-3.5 (a) (1). As an exhibit to the complaint, however, plaintiff offered a 12-page document entitled “Research Summary,” which, he avers, without contradiction by defendant, was prepared as a provenance in conjunction with the anticipated auction of the painting. Although the provenance is not verified, or the author even identified, in the absence of objection by defendant we accept the information in the document to be true for purposes of addressing the issue of plaintiffs standing.
Initially, we note that the law in New York is that, absent extraordinary circumstances, even a party who is the sole beneficiary of the estate “cannot act on behalf of the estate or exercise . . . fiduciary’s rights with respect to estate property” (Jackson v Kessner, 206 AD2d 123, 127 [1994], lv dismissed 85 NY2d 967 [1995], citing McQuaide v Perot, 223 NY 75 [1918]). The appropriate avenue is to be appointed a representative *141 pursuant to the requirements of the EPTL (see e.g. Matter of Peters v Sotheby’s Inc., 34 AD3d 29, 34 [2006], lv denied 8 NY3d 809 [2007]).
In seeking to escape the strictures of the EPTL, Schoeps argues first that when, under relevant foreign law, the property of the decedent passes directly to the heirs, letters of appointment need not be obtained. As authority, he cites a one-paragraph decision in Roques v Grosjean (66 NYS2d 348 [Sup Ct, NY County 1946]). This case involved a claim by a plaintiff who was the heir of a French decedent. The court made no analysis of French law in its decision, nor did it apply a conflicts of law analysis. It concluded that the plaintiff was suing on her own behalf as owner of the property, and found that French law vested title in her to all of the decedent’s assets immediately upon the death of the decedent because she was the sole legatee.
The obvious initial difference between Roques and this case is that Schoeps is not a sole legatee. Indeed, he claims that his interest is limited to 12.5% of the estate. Although he alleges in his proposed third-party complaint, which is unverified, and which he has not received permission to file, that he has received assignments from all the remaining heirs, the purported assignments are not part of the record.
It is significant that although Schoeps now argues that German law applies, he initially took the contrary position. When defendant raised conflicts of law concerns about the appropriateness of New York as a venue, Schoeps argued that German law did not apply. The following is excerpted from his memorandum in opposition: “The Foundation suggests that German or British law would apply to this case. This is patently incorrect. German law will have no application, since the place of theft—in this case Nazi Germany—is irrelevant to any choice of law analysis regarding stolen property.”
He eventually reversed himself. At oral argument on the motion, the court directed the parties to submit supplemental memoranda after Schoeps argued that he had discovered additional authority in support of his claim to standing. The authority was a decision of the United States District Court for the Eastern District of New York, Bodner v Banque Paribas (114 F Supp 2d 117 [2000]), which will be addressed infra. Relying on Bodner, Schoeps claimed that the Bartholdy estate had long been closed, and that the property rights of the heirs vested immediately upon Bartholdy’s death under German law. He did *142 not offer any affidavit from an expert in German law, or even cite the applicable provision of German law which would support this contention. He also did not explain why this position, such as it was, could be reconciled with his prior position that German law did not apply.
On appeal, again without retracting his prior position that German law did not apply, Schoeps refers this Court to various Web sites, including that of the German Ministry of Justice. Obviously, a question of law can be addressed for the first time on appeal under certain circumstances (see Baker v Bronx Lebanon Hosp. Ctr., 53 AD3d 21, 27 [2008]). In order to do so, however, the record must be sufficient to make a determination. At a minimum, the absence of the affirmation of an expert in German law, opining as to the applicability of German law to plaintiffs standing to bring this lawsuit without being appointed as a personal representative, renders the record insufficient.
In any event, we are not persuaded by the authority cited by plaintiff. Roques is the only New York decision which holds that letters are not needed by a nonresident to maintain a cause of action in New York, when the law of the plaintiffs domicile vests title to personal property in the heirs at the time of death. Moreover, in making its determination, the Roques court cited a Ninth Circuit decision which held that a public administrator in California was not a necessary party to an action for fraud by the heirs of a French resident who had owned property in California (see Anglo Cal. Nat. Bank of San Francisco v Lazard, 106 F2d 693 [1939], cert denied 308 US 624 [1940]). In Anglo California, however, the court pointed out in a footnote that the appropriate method by which an heir to a French estate establishes his standing is by filing all testamentary instruments with a notary, and then having the notary execute a written instrument known as an “acte de notariete” (id. at 699 n 2). Presumptively, that instrument was part of the record in the litigation. In any event, it is evident that even if under French law title were vested at the time of death, a proceeding before a French notary was still necessary to document standing.
Whether an “acte de notariete” was submitted in Roques is not recorded in the decision, but, as discussed above, there is nothing in competent form in this case to indicate that Schoeps has offered any proof of his own standing. He has not submitted any affidavit, his complaint is not verified, the research document contains neither an author nor a notarization, there are no written assignments, and the record is bereft of an affidavit *143 from an expert in German law. Such deficiencies give us no reason to depart from the guiding principle that letters of appointment should first be obtained before standing is recognized.
As noted above, Schoeps also relied on Bodner v Banque Paribas (114 F Supp 2d 117 [2000]), which permitted a class of heirs of Jewish customers to sue French banks in New York to pursue claims to recover assets expropriated during the Nazi occupation, without first obtaining letters pursuant to EPTL 11-3.2. The only authority upon which the Bodner court relied was the Roques case. There was no discussion in the decision about whether the plaintiffs had obtained an acte de notariete, and the court merely concluded that the plaintiffs had standing because their ownership interests vested upon their forebears’ deaths. Likewise, in Pressman v Estate of Steinvorth (860 F Supp 171 [1994]), the court allowed an individual who was the universal heir of a Venezuelan decedent to pursue claims in New York, without obtaining letters. The Roques case was again the sole authority cited.
We cannot state that these cases were wrongly decided, because the decisions do not reflect what type of evidence was provided by the heirs to establish their standing. Nevertheless, we reject any contention that these cases provide precedent for allowing individuals who assert rights obtained through inheritance from a foreign decedent to pursue claims in New York without first obtaining letters pursuant to the EPTL, or at least following the alternate procedure under section 13-3.5 (a) (1) of submitting an affidavit, as well as whatever other proof may be required by the court. Even this additional proof may not guarantee the recognition of standing, but it will allow for a more complete record to be made before a determination is made.
Schoeps also relies on the recent decision in Schoeps v Museum of Modern Art (594 F Supp 2d 461 [2009]), in which he, along with other Bartholdy heirs, sued the Museum of Modern Art and the Solomon R. Guggenheim Foundation to recover possession of paintings in those institutions’ possession that allegedly formerly belonged to Bartholdy, and were sold under similar economic and political duress. In denying defendants’ motion for summary judgment on the ground that plaintiffs lacked standing, the Southern District relied upon Roques and its federal progeny, Bodner and Pressman. Indeed, the court specifically stated that it was “constrained to disagree” with the motion court’s decision in this case “[i]n light of Roques” (id. at 467).
*144 It is thus clear that all authority for the proposition that claims such as the one at issue here may be pursued without the appointment of plaintiff as a personal representative flows from a one-paragraph decision of the New York County Supreme Court written 60 years ago, which was never appealed. We conclude that the precedential value of Roques must be limited to the recognition that foreign law may provide for a different method of establishing the right to title in heirs. It cannot support the proposition that common-law claims in New York may be pursued in New York without first complying with the procedural requirements of the EPTL. One method, although not necessarily the exclusive one, would be to provide an affidavit from an expert in the law of the foreign jurisdiction concerning inheritance rights,* as well as the foreign jurisdiction’s equivalent of an “acte de notariete” formally certifying the party’s right to pursue claims on behalf of the estate. Clearly, we do not seek to limit the manner by which a foreign legal representative can establish standing; our decision is limited to the holding that merely being vested with title at the time of the decedent’s death is insufficient grounds for permitting a party to pursue a claim in this jurisdiction.
Accordingly, the order of the Supreme Court, New York County (Rolando T. Acosta, J.), entered November 26, 2007, which granted defendant’s motion to dismiss the complaint and denied plaintiff’s motion for leave to file a third amended complaint, should be affirmed, without costs.
Gonzalez, P.J., Catteeson, Moskowitz and Renwick, JJ., concur.
Order, Supreme Court, New York County, entered November 26, 2007, affirmed, without costs.

 We note that in the federal action Schoeps apparently provided expert authority on German law indicating that title passes by operation of law at the time of death. Nothing in the decision indicates, however, what proof, if any, was submitted to the court as to the bona fides of plaintiff’s claim to standing.