■ JAY H. KOPPEL et al., Respondents, v WIEN, LANE & MALKIN, a Partnership, Appellant.—Order of the Supreme Court (Edward J. Greenfield, J.), New York County, entered on April 16, 1985, which, *inter alia,* denied defendant's cross motion for partial summary judgment, is modified on the law to the extent of granting defendant's cross motion for partial summary judgment dismissing the claim regarding the $5,000,000 compensation insofar as it is asserted on behalf of 120 Broadway Company, dismissing plaintiffs' claim concern-

ing the brokerage commission paid to Charles F. Noyes Company, and dismissing the claim for punitive damages, and otherwise affirmed, without costs or disbursements.

120 Broadway Company is a general partnership which was formed on or about November 10, 1958 for the purpose of acquiring the operating sublease on the Equitable Building, a large office building located at 120 Broadway in Manhattan. Lawrence A. Wien, senior partner of defendant law firm, was apparently the motivating force behind the deal since it was he who contracted to purchase the sublease and he who assembled the group of investors. Although Wien did not become a member of the company himself, he and Harry B. Helmsley (an investor as well as a promoter) received an override interest in the profits and gains of the partnership. Among the provisions of the partnership agreement was that defendant would maintain the books and records and supervise the operation of the company. For these services, defendant was to receive $36,000 per year, then raised to $54,000 per year and ultimately increased to 1% of the partnership's gross receipts.

In 1980, Wien determined that it would be advantageous to sell the Equitable Building, comprising the operating lease held by the partnership and a ground lease held by another company, 120 Broadway Associates, to which defendant was also counsel. By August of that year, an offer to purchase the leases for $60,000,000 had been procured. A meeting of the partnership was thereafter held, and Wien advised that he would expeditiously prepare a solicitation letter that would be mailed to all of the members of 120 Broadway Company. By letter dated September 3, 1980, Wien solicited the partners' consent to the proposed sale. He also explained that the $60,000,000 would be divided as follows: $27,000,000 to 120 Broadway Associates, $2,500,000 to Charles F. Noyes Company as a brokerage commission for the sale of both leases, $2,250,000 to satisfy the existing mortgage, and $2,250,000 for certain enumerated outstanding costs and fees, thus leaving a balance of $26,000,000. According to Wien: "Several partners have indicated that Wien, Lane & Malkin should share substantially in the great profit being made on this sale. They have agreed that, including fees and disbursements for representing 120 Broadway Company on the sale, Wien, Lane & Malkin should receive $5,000,000. If this amount is paid, the balance would be $21,000,000 * * *

"If the sale is approved, as we strongly recommend, and the contract is signed, a meeting of the partners will be held. At

that meeting, the amount payable to Wien, Lane & Malkin will be determined. Each partner will individually decide what his or her share should be. No partner will be bound by the action of other partners."

The letter concluded with the statement that: "If you have any question, or wish to discuss this letter or any part of it, please call me or Peter Malkin promptly." A consent form, which was evidently attached to Wien's letter, then requested that each member of the company agree that: "As a partner in 120 Broadway Company, I consent to the sale of the operating lease owned by Company on the premises 120 Broadway, New York, New York on the terms and conditions set forth in the letter of Lawrence A. Wien, dated September 3, 1980."

In order for the prospective sale to be consummated, the partners' agreement was required and, in due course, all of the partners signed the form submitted to them by Wien. Eventually, a majority of the partners also gave their approval to Wien's proposal that defendant law firm be compensated in the amount of $5,000,000 for performing services beyond those contemplated in the partnership agreement. This compensation was to be taken out of the individual proceeds of each partner's share of the sale. After the closing, which occurred in April of 1981, defendant distributed the net sales proceeds to the partners and to the holders of override interests, deducting the $5,000,000 compensation from the individual shares of those partners who had agreed to the payment. Those partners who had withheld their consent, including plaintiffs herein, also received their share of the net sales proceeds reduced by the amount of their pro rata portion of the $5,000,000. Defendant asserts that the money has been deposited in a segregated, interest-bearing account pending resolution of the dispute over the compensation.

Subsequently, the nonconsenting partners commenced the instant action seeking to recover the entire $5,000,000 paid to defendant and the brokerage commission received by Charles F. Noyes Company. Plaintiffs also demand an accounting with respect to the sale of the sublease, the moneys retained by defendant and the amounts paid out as commissions and fees. Finally, they ask for punitive damages of up to an additional $5,000,000. In that connection, defendant, in response to a motion from plaintiffs not here at issue, cross-moved for summary judgment dismissing (1) the claim concerning the $5,000,000 insofar as it is asserted on behalf of 120 Broadway Company rather than the individual plaintiffs in their own

right, (2) the claim to recover the Noyes brokerage commission, (3) the claim for an accounting, and (4) the claim for punitive damages. Following Special Term's denial of the cross motion, defendant appealed to this court.

It is defendant's position that while the nonconsenting partners may challenge payment of their pro rata share of the $5,000,000 compensation, they may not do so on behalf of the company. This is because, defendant contends, the money was never sought from the company but only from the distributed shares of the individual partners or holders of the override interest and has been obtained only from those who voluntarily agreed to such payment. Defendant also points out that none of those who consented to the compensation has joined in the litigation or attempted to recoup his or her share of the amount paid. Indeed, the record herein indicates that there is merit to defendant's argument. The consents obtained from those partners who agreed to them were solicited, discussed and procured prior to the sale, and the compensation was then deducted from the individual proceeds distributed to the partners and not from funds belonging to the partnership directly. Moreover, as a prior court aptly held in an order entered on May 29, 1984, which denied plaintiffs' motion to certify the action as a class action, plaintiffs could not properly be permitted to assert claims on behalf of their fellow partners since the interests of the two groups are "antagonistic to and in conflict with" each other. Under these circumstances, defendant is entitled to dismissal of those claims asserted on behalf of the company.

Plaintiffs do not deny that they signed the consent form attached to Wien's letter of September 3, 1980. In endeavoring to recover the commission paid to Noyes, they urge that they never provided a voluntary or informed consent to such payment, and the amount of the commission and the basis for it were never discussed or justified. According to plaintiffs, they were simply presented with a consent form which authorized the sale pursuant to terms specified in the letter including payment of a $2,500,000 brokerage commission to Noyes, and were advised that if the consents were not given, the leasehold would not be sold. However, notwithstanding plaintiffs' challenge to the amount of the commission, the fact remains that they signed the consent form and, thus, authorized the sale of the lease "on the terms and conditions set forth in the letter of Lawrence A. Wien, dated September 3, 1980." Among those terms and conditions was payment of the commission to Noyes. Further, there is no indication that despite Wien's

statement that "[i]f you have any question, or wish to discuss this letter or any part of it, please call me or Peter Malkin promptly", plaintiffs at any time took issue with payment of the Noyes commission prior to signing the consent form. Having agreed to such payment in the past, they are now bound by their consent.

Although not disputing that there exists a fiduciary relationship between plaintiffs and defendant, defendant argues that Special Term should nonetheless have dismissed the cause of action seeking an accounting since plaintiffs are already in possession of all the detailed financial information relating to the sale and to this litigation. Therefore, it is urged, there is no need for an audit. Yet, regardless of whether or not all of the relevant facts are already known to plaintiffs, it is clear that whenever there is a fiduciary relationship between the parties, as is the situation here, there is an absolute right to an accounting notwithstanding the existence of an adequate remedy at law. *(Di Terlizzi v Di Terlizzi,* 92 AD2d 604; *Seneca v Novaro,* 80 AD2d 909; *Kleckner v Levine,* 12 AD2d 788; *Matter of Ernst,* 54 App Div 363.) Consequently, Special Term appropriately denied defendant's motion to dismiss the request for an accounting.

Defendant is, however, correct in asserting that there is no basis for a claim for punitive damages. As this court recently declared in *Philippson v Hexalon Real Estate* (111 AD2d 126, 127): "Plaintiffs have failed to allege conduct rising to the requisite level of moral culpability to warrant punitive damages. *(Walker v Sheldon,* 10 NY2d 401). Moreover, the action seeks to rectify an alleged private wrong, not one involving the public at large." *(See also, Garrity v Lyle Stuart, Inc.,* 40 NY2d 354; *Parkway Windows v River Tower Assoc.,* 108 AD2d 660.) Concur—Kupferman, J. P., Ross, Milonas, Kassal and Rosenberger, JJ.