Woodward v Levine (2025 NY Slip Op 51344(U))

[*1]

Woodward v Levine

2025 NY Slip Op 51344(U)

Decided on August 7, 2025

Supreme Court, New York County

Kim, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 7, 2025
Supreme Court, New York County

John Woodward, Kristine Woodward, 
 G.O.L.A. Inc. D/B/A Woodward Gallery, Plaintiffs,

against
Nira Levine, NLR Unlimited, Inc., Defendants.

Index No. 655709/2016

Plaintiffs' Counsel: 
Michael J Roberts, Esq.
401 Broadway
New York, NY 10013
Defendants' Counsel: 
Carter A. Reich, Esq. 
106 W. 32nd Street, Suite 123
New York, NY 10001

Judy H. Kim, J.

The following e-filed documents, listed by NYSCEF document number (Motion 009) 231, 232, 233, 234, 235, 236, 237, 238, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 258, 260, 261, 262, 263, 264 were read on this motion for SUMMARY JUDGMENT(AFTER JOINDER.
Upon the foregoing documents, the motion by plaintiffs John Woodward, Kristine Woodward, and G.O.L.A. Inc. d/b/a Woodward Gallery (collectively, "the Woodwards") for summary judgment dismissing the counterclaims of defendants Nira Levine and NLR Unlimited, Inc. ("NLR") is granted in part. The defendants' cross-motion to strike the Woodward's answer to the defendants' counterclaims or compel discovery is granted in part.
FACTUAL AND PROCEDURAL BACKGROUND
The Woodward Gallery (the "Gallery") is a Manhattan art gallery run by John Woodward, the Gallery's director, and his wife, Kristine Woodward, its Vice President. Defendants were clients of the Woodwards since 2002, purchasing prints either independently or jointly with the Woodwards with the intent to resell them for a profit.
The Woodwards commenced this action, asserting a claim for defamation based on articles in the New York Post and Artforum stating that the Woodwards had used doctored documents to trick Levine into purchasing fake Andy Warhol prints (NYSCEF Doc No. 2, complaint). Plaintiffs' complaint was subsequently dismissed in a decision and order dated March 17, 2021 (Woodward v Levine, 2021 NY Slip Op 31056[U] [Sup Ct, NY County 2021]), leaving only the defendants' counterclaims for breach of contract, breach of fiduciary duty, fraud, fraudulent concealment, breach of the implied covenant of good faith and fair dealing, and unjust enrichment
These counterclaims are based on three transactions: defendants' 2007 purchase of a portfolio of lithograph prints and accompanying poems entitled "21 Etchings and Poems, 1960" (the "Etchings"), the parties' purchase of ninety Andy Warhol "Space Fruit" prints (the "Warhol Prints"), and Levine's loan of $90,000.00 to the Woodwards, who put up their share of the Warhol Prints as collateral for that loan. 
Defendants assert that the Woodwards charged her more than they paid for the Etchings, in breach of their agreement and their fiduciary duty to defendants. Defendants further assert that the Woodwards agreed to split the $180,000.00 cost of the Warhol Prints with Levine but in fact purchased the prints for the $90,000.00 that Levine provided. In addition, the Woodwards fraudulently concealed from her that certain of the Warhol Prints had previously been submitted the Warhol Foundation for authentication and received a "B" grade, indicating that they could not be authenticated at that time, without further information. Finally, defendants assert that in light of the foregoing, she was fraudulently induced into providing the Woodwards with a $90,000.00 loan and they were unjustly enriched as a result.

Nira Levine Examination Before Trial Testimony

At her examination before trial, Levine testified that her relationship with the Woodwards began around 2002, and that she was involved in three types of transactions with them: she and the Woodwards would split the purchase of a piece of art and then share any profits from its resale; Levine would solely purchase a piece of art offered by the Woodwards but split any resale profits with the Woodwards; or one party would find a buyer for a piece of art while the other would find a seller and they would share the commission from that sale equally (NYSCEF Doc No. 234, Levine tr at 23, 26-27, 73). 
Levine testified that she paid the Woodwards $28,000.00 for the Etchings, based on her understanding that, per their oral agreement, this was the price at which they had been purchased by the Woodwards, but later learned—from Barbara Marburger, an art dealer in New Mexico who spoke with the seller of the Etchings—that the Woodwards had purchased this portfolio for thousands less than Levine paid (id. at 62-65), effectively taking an unauthorized commission.
Levine further testified that she agreed with the Woodwards to split the $180,000.00 purchase price of the Warhol Prints and that she paid $90,000.00 to the Woodwards based on that understanding but that the Woodwards failed to pay their half (id. at 73-75, 118, 122). Moreover, after the purchase of the Warhol Prints was completed, Levine learned that some of these prints had previously been submitted to the Warhol Foundation for authentication and been stamped "denied" (id. at 90). Levine testified that she would not have agreed to purchase these prints had she been aware of the prior denial (id. at 94, 113-114). 

Kristine Woodwards Examination Before Trial Testimony

Kristine Woodward testified at her examination before trial that she did not recall what the Gallery had paid for the Etchings but acknowledged that they could have paid less than [*2]$28,000.00 (NYSCEF Doc No. 236, Kristine Woodward tr. at 97-98). She also confirmed that the Woodwards had paid $90,000.00, rather than $180,000.00, to purchase the Warhol Prints and asserted that the Consignment Memo the Woodwards provided to Levine—which stated "consignment value: we paid 180,000 USD/90,000 USD each"—was accounting for the Woodwards' "sweat equity" in having the Warhol Prints authenticated by the Warhol Foundation (id. at 114-115). She further testified that, contrary to Levine's testimony, the Woodwards had discussed the unauthenticated status of these Warhol Prints with Levine many times prior to their purchase and had also shared their expectation that these prints would be authenticated by the Warhol Foundation in the future (id. at 130-132, 135). These Warhol Prints were, in fact, authenticated by the Warhol Foundation between 2008 and 2010, after the purchase (id. at 135).
Based on these examinations before trial, the Woodwards now move for summary judgment dismissing defendants' counterclaims. As to the breach of contract counterclaim arising out of the Etchings purchase, they assert that defendants "adduced no evidence that [the Woodwards] ever stated . . . that $28,000 was the full price for the collection . . . [but that the Woodwards] told [defendants] that the collection would cost them $28,000" (NYSCEF Doc No. 232, Roberts affirm at ¶93) and argue that Levine's reference to her conversation with Barbara Marburger as the source of her information on this point, "establishes that [defendants] have adduced no credible non-hearsay evidence that the Gallery took a modest commission" on the Etchings (NYSCEF Doc No. 232, Roberts affirm. at ¶90).
As for the breach of contract claim arising out of the Warhol Prints purchase, the Woodwards emphasize that these prints were eventually authenticated by the Warhol Foundation and argue that, as a result, Levine has received the benefit of the bargain—i.e. forty-five authenticated Warhol prints for $90,000.00. The Woodwards also argue that the defendants' claim for breach of the implied covenant of good faith and fair dealing must be dismissed as duplicative of defendants' breach of contract counterclaims.
As for defendants' other counterclaims, the Woodwards argue that they are entitled to summary judgment dismissing the fraud counterclaim based on their alleged failure to disclose the Warhol Prints "B" grades because "there is no evidence . . . that any of plaintiffs' prints had this preliminary stamp" or "that a provisionally denied stamp on an Andy Warhol print, which is subsequently authenticated by the Andy Warhol Foundation, has any effect on its value" (NYSCEF Doc No. 232, Roberts affirm at ¶¶72-74). They further note that "Kristine absolutely denied plaintiffs' spurious claims that they were not informed about the provisional denied stamps on some of the prints" (id.). The Woodwards argue that no unjust enrichment claim arises from the $90,000.00 loan secured by the Woodwards' Warhol Prints because there is no dispute that this loan was fully repaid. Finally, they argue that the breach of fiduciary duty claim must be dismissed because the record establishes that their relationship with Levine, as a client of the Gallery, was purely a business relationship conducted at arm's length and that neither their friendly relationship with Levine nor her reliance on their expertise and judgment in which choosing her investments transformed it into a fiduciary relationship.
Defendants oppose the motion [FN1]
and cross-move for an order, pursuant to CPLR 3124 and [*3]3126, striking the Woodwards' Answer to their counterclaims or compelling the Woodwards to provide outstanding discovery. They also seek, in the alternative, permission to inspect the contents of the Woodwards' storage units for documents responsive to defendants' discovery demands. In opposition to the cross-motion, the Woodwards assert that they have responded to all discovery demands with all relevant material in their possession and that, to the extent Levine takes issue with their objection to certain of her post-EBT demands, the discovery the Woodwards seek in those demands is irrelevant to this action.

DISCUSSION

 Plaintiffs' Motion for Summary Judgment Dismissing Defendants' Counterclaims
The Woodwards' motion for summary judgment is granted as to defendants' claim for breach of fiduciary duty and claim for punitive damages and is otherwise denied.
"The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers. Once this showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986] [internal citations omitted]).
As an initial matter, the Woodwards' arguments that defendants have adduced no credible non-hearsay evidence that the Woodwards took a commission on the Etchings or that any of defendants' Warhol Prints had a "B" grade stamp (or that such a stamp would affect her prints' value, given their subsequent authentication) misapprehends their burden on the motion, as they amount to "[m]erely pointing to gaps in an opponent's evidence [which] is insufficient to satisfy the movant's burden" (Ferraro v McGovern, 193 AD3d 571 [1st Dept 2021] [internal citations omitted]).

Breach of Contract
The Woodwards' motion for summary judgment dismissing the breach of contract claim is denied. A comparison of the testimony of Levine and Kristine Woodward [FN2]
establishes that there are many disputed issues of fact to be resolved at trial including: whether the Woodwards charged Levine a greater price for the Etchings than they paid and, if so, whether this was contemplated by the parties' oral agreement; whether Levine understood that the Woodwards were purchasing the Warhol Prints for $180,000.00 in cash or paying $90,000.00 and contributing their "sweat equity"; and whether Levine knew that some of these Warhol Prints had been given a "B" grade from the Warhol Foundation at the time of this purchase.[FN3]

Contrary to the Woodwards' argument, Kristine Woodward's testimony does not establish that Levine was told in advance about the "B" grade on some of the Warhol Prints but creates an [*4]issue of fact, given Levine's testimony to the contrary. The Woodwards' assertion that they "had no agreement with [Levine and NLR] not to charge them a commission" and that Woodwards told defendants that "$28,000 was the full price for the collection" (i.e. was the cost to Levine rather than their cost) are also disputed issues of fact.
The Woodwards' argument that defendants received the benefit of the bargain misapprehends the nature of Levine's claim: she testified that the parties agreed to share the cost of the Warhol Prints equally but in fact she paid for the entire set of prints while the Woodwards took half of the prints without contributing any money. Whether the Woodwards' course of conduct was consonant with the terms of the parties' oral agreement remains to be seen. Finally, while the Woodwards argue that Levine has not been damaged because she can sell her Warhol Prints for a profit, this is speculative and insufficient to support summary judgment.

Implied Covenant of Good Faith and Fair Dealing
The Woodwards' motion as to defendants' breach of the implied covenant of good faith and fair dealing counterclaim is also denied. Such a claim is not duplicative where it "arises out of different facts" from a breach of contract claim (Hong Leong Fin. Ltd. (Singapore) v Stanley, 131 AD3d 418, 419 [1st Dept 2015] [internal citations omitted]). In this case, the breach of the implied covenant of good faith and fair dealing claim is based upon the Woodwards' alleged failure to disclose pertinent details about the Warhol Prints prior to their purchase, which is sufficiently distinct from the defendants' breach of contract claim, based upon the Woodwards's alleged breach of express terms of the parties' oral contract in taking undisclosed commissions and failing to contribute half of the purchase price for the Warhol Prints.

Fraud/Fraudulent Concealment
The Woodwards' motion is also denied as to Levine's fraud counterclaims. As discussed above, the Woodwards' argument that no damages resulted from any fraud regarding the "B" grade of certain Warhol Prints given their subsequent authentication improperly attempts to shift the burden of proof on this motion onto Levine and is speculative. However, the Court agrees with the Woodwards that even if defendants establish these fraud claims at trial they would not be entitled to punitive damages. Punitive damages are appropriate where "the complained of conduct by defendant was not directed at the public generally and was not shown to have been sufficiently egregious to warrant exaction of such damages" (Plishner v Citibank, N.A., 260 AD2d 240 [1st Dept 1999] [internal citations omitted]) while "[p]laintiffs have failed to allege conduct rising to the requisite level of moral culpability to warrant punitive damages and seek only "to rectify an alleged private wrong, not one involving the public at large" (Koppel v Wien, Lane & Malkin, 125 AD2d 230, 234 [1st Dept 1986] [internal citations omitted]).

Unjust Enrichment
The Woodwards' motion is also denied as to defendants' unjust enrichment counterclaim. The arguments raised by the Woodwards—that Levine received the benefit of the bargain as to her purchase of the Warhol Prints and has not supplied evidence establishing that the Woodwards paid less than $28,000.00 for the Etchings—are unavailing, for the reasons set forth above.

Breach of Fiduciary Duty
The Woodwards' motion for summary judgment is granted as to Levine's breach of fiduciary duty claim. The parties' undisputed testimony establishes that no fiduciary relationship existed between them. Levine, as an art investor since the 1990s, is an experienced investor and her art purchases from or with the Woodwards were arm's length transactions which do not give [*5]rise to a fiduciary relationship (see Mafg Art Fund, LLC v Gagosian, 2014 NY Slip Op 30321[U] [Sup Ct, NY County 2014] aff'd as mod on other grounds MAFG Art Fund, LLC v Gagosian, 123 AD3d 458, 459 [1st Dept 2014]). Levine's testimony that she became friends with the Woodwards and made the purchases they suggested based on her faith in their expertise does not change the character of this relationship (see id. [complaint's allegations regarding "defendants' various roles as consignee, seller, buyer, broker, bidder, and agent with respect to plaintiffs' artwork" insufficient to establish fiduciary relationship between the parties]). 

Defendants' Cross-Motion to Strike or Compel
Defendants' cross-motion to strike the Woodwards' answer to defendants' counterclaims is denied. The record reflects that, while discovery as protracted, there are no outstanding demands. Neither is defendants' position that an independent search of the Woodwards' storage units is warranted supported by the record. However, defendants' cross-motion to compel is granted in limited part. The Court agrees with the Woodwards' position that they properly rejected portions of defendants' post-EBT demands for John and Kristine Woodward (see NYSCEF Doc No. 250, 252, post-EBT demands) as irrelevant, except as to that portion of demand number eight seeking proof of the price at which the Woodwards' sold their Warhol Prints. This information may be relevant to defendants' damages should they ultimately establish their breach of contract claim concerning the Warhol Prints at trial. Accordingly, the Woodwards are to produce all relevant documents establishing the amounts they were paid for these Warhol Prints, redacting the purchaser's information as necessary, within thirty days of the date of this decision and order.
Finally, to the extent defendants seeks attorneys' fees in connection with their cross motion, this request is denied. "Under the general rule, attorney's fees are incidents of litigation, and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule" (Brathwaite v Francois, 215 AD3d 582 [1st Dept 2023]), and none of these categories apply.
Accordingly, it is
ORDERED that plaintiffs' motion for summary judgment dismissing the defendants' counterclaims is granted in part, to the extent that defendants' breach of fiduciary duty counterclaim and demand for punitive damages are dismissed, and is otherwise denied; and it is further
ORDERED that defendants' motion to strike plaintiffs' answer to defendants' counterclaims is denied; and it is further
ORDERED that defendants' motion to compel is granted to the limited extent that plaintiffs shall, within thirty days of the date of this decision and order, provide defendants with relevant documents establishing or referencing the amounts they were paid for the Warhol Prints, redacting the purchaser's information; and it is further
ORDERED that defendants shall, within ten days of the date of this decision and order, serve a copy of same, with notice of entry, upon plaintiffs as well as the Clerk of the Court; and it is further
ORDERED that such service upon the Clerk of the Court shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "EFiling" page on this court's website); and it is further
ORDERED that the parties are to appear for a status conference in Part 4 on October 16, [*6]2025, at 9:30 am. 
This constitutes the decision and order of the Court.
DATE 8/7/2025
HON. JUDY H. KIM, J.S.C.

Footnotes

Footnote 1:The Court disregards that section of defendants' reply to their cross-motion which improperly raises arguments in opposition to the Woodwards' summary judgment motion.

Footnote 2:While John Woodward's testimony is referenced, a transcript of same was not uploaded by counsel in connection with this motion and not found anywhere else on NYSCEF.

Footnote 3:In light of the sharply contested factual issues detailed above, the Court declines the defendants' invitation to search the record and grant them summary judgment on their breach of contract counterclaim.